Citation Nr: 1302157 
Decision Date: 01/18/13 Archive Date: 01/23/13

DOCKET NO. 09-03 833 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Waco, Texas


THE ISSUES

1. Entitlement to an evaluation in excess of 10 percent for gastroesophageal reflux disease (GERD) with dysphagia and history of hiatal hernia.

2. Entitlement to an evaluation in excess of 10 percent for an undifferentiated somatoform disorder (previously rated as 10th cranial nerve and visceral reflex syndrome), prior to October 15, 2011.

3. Entitlement to an evaluation in excess of 30 percent for an undifferentiated somatoform disorder (previously rated as 10th cranial nerve and visceral reflex syndrome), since October 15, 2011.



REPRESENTATION

Appellant represented by: Texas Veterans Commission


WITNESS AT HEARINGS ON APPEAL

Appellant


ATTORNEY FOR THE BOARD

C. Lawson, Counsel


INTRODUCTION

The Veteran served on active duty from May 1978 to March 1986.

This matter comes to the Board of Veterans' Appeals (Board) on appeal from a May 2008 rating decision by a Regional Office (RO) of the Department of Veterans Affairs (VA). The Veteran presented testimony at an RO hearing in April 2010 and at a Board hearing before the undersigned acting Veterans Law Judge in May 2011, and transcripts of the hearings are associated with his claims folder. The case was remanded to the RO in September 2011 for further development.


FINDINGS OF FACT

1. At all times during the appeal period, the Veteran's GERD symptoms most closely reflect persistently recurrent epigastric distress with dysphagia, pyrosis, and regurgitation, accompanied by substernal, arm, or shoulder pain, productive of considerable impairment of health; he does not have symptoms of pain, material weight loss and hematemesis or melena with moderate anemia; or other symptoms combinations productive of severe impairment of health. 

2. Prior to October 15, 2011, the Veteran's somatoform disorder, manifested by syncopal episodes, did not produce occupational and social impairment with inability to perform occupational tasks. 

3. Since October 15, 2011, the Veteran's somatoform disorder, manifested by anxiety, has not produced occupational and social impairment with reduced reliability and productivity. 


CONCLUSIONS OF LAW

1. The criteria for an increased evaluation of 30 percent, but no higher, for service connected GERD with dysphagia and history of hiatal hernia are met. 38 U.S.C.A. §§ 1155, 5107 (West 2002 & Supp. 2011); 38 C.F.R. §§ 3.321, 4.1, 4.3, 4.7, 4.114, Diagnostic Code 7346 (2012).

2. The criteria for an evaluation in excess of 10 percent for undifferentiated somatoform disorder prior to October 15, 2011, are not met. 38 U.S.C.A. §§ 1155, 5107 (West 2002 & Supp. 2011); 38 C.F.R. §§ 3.102, 3.321, 4.1, 4.3, 4.7, 4.130, Diagnostic Code 9430 (2012).

3. The criteria for an evaluation in excess of 30 percent for undifferentiated somatoform disorder since October 15, 2011, are not met. 38 U.S.C.A. §§ 1155, 5107 (West 2002 & Supp. 2011); 38 C.F.R. §§ 3.102, 3.321, 4.1, 4.3, 4.7, 4.130, Diagnostic Code 9430 (2012).



REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

VA's Duties to Notify and Assist

Upon receipt of a complete or substantially complete application, VA must notify the claimant of the information and evidence not of record that is necessary to substantiate a claim, which information and evidence VA will obtain, and which information and evidence the claimant is expected to provide. 38 U.S.C.A. § 5103(a).

The notice requirements apply to all five elements of a service connection claim: 1) Veteran status; 2) existence of a disability; (3) a connection between the Veteran's service and the disability; 4) degree of disability; and 5) effective date of the disability. Dingess v. Nicholson, 19 Vet. App. 473 (2006).

The notice must be provided to a claimant before the initial unfavorable adjudication by the RO. Pelegrini v. Principi, 18 Vet. App. 112 (2004).

The notice requirements may be satisfied if any errors in the timing or content of such notice are not prejudicial to the claimant. Mayfield v. Nicholson, 19 Vet. App. 103 (2005), rev'd on other grounds, 444 F.3d 1328 (Fed. Cir. 2006).

The RO provided the Veteran pre-adjudication notice by a letter dated in February 2008. The notification complied with the requirements of Quartuccio v. Principi, 16 Vet. App. 183 (2002), identifying the evidence necessary to substantiate a claim and the relative duties of VA and the claimant to obtain evidence; and Pelegrini v. Principi, 18 Vet. App. 112 (2004). The Veteran was informed of the need to show the impact of disabilities on daily life and occupational functioning. Vazquez-Flores v. Peake, 22 Vet. App. 37 (2008), rev'd in part sub nom. Vazquez-Flores v. Shinseki, 580 F.3d 1270 (Fed. Cir. 2009). 

VA also has a duty to assist a claimant in substantiating his claims. VA assisted the Veteran in obtaining evidence; examined the Veteran for the disabilities at issue in February 2008, May 2010, and October 2011; and afforded the Veteran the opportunity to give testimony before the Board. The examinations were adequate as they provide sufficient information to rate the disabilities at issue. All known and available records relevant to the issues on appeal have been obtained and associated with the Veteran's claims file; and the Veteran has not contended otherwise. The RO complied with the Board's September 2011 remand by examining the Veteran as required and readjudicating the claims. 

VA has complied with the notice and assistance requirements and the Veteran is not prejudiced by a decision on the claim at this time. 

Higher ratings

Disability evaluations are determined by the application of the facts presented to VA's Schedule for Rating Disabilities (Rating Schedule) at 38 C.F.R. Part 4. The percentage ratings contained in the Rating Schedule represent, as far as can be practicably determined, the average impairment in earning capacity resulting from diseases and injuries incurred or aggravated during military service and the residual conditions in civilian occupations. 38 U.S.C.A. § 1155; 38 C.F.R. §§ 3.321(a), 4.1. 

In evaluating the severity of a particular disability, it is essential to consider its history. 38 C.F.R. § 4.1; Peyton v. Derwinski, 1 Vet. App 282 (1991). Where entitlement to compensation has already been established and an increase in the disability rating is at issue, the present level of disability is of primary importance. Francisco v. Brown, 7 Vet. App 55, 58 (1994). Separate ratings may be assigned for separate periods of time based on the facts found, however. This practice is known as "staged" ratings." Fenderson v. West, 12 Vet. App. 119, 126-127 (1999); Hart v. Mansfield, 21 Vet. App. 505 (2007). 

If the evidence for and against a claim is in equipoise, the claim will be granted. A claim will be denied only if the preponderance of the evidence is against the claim. See 38 U.SC.A. S 5107 (West 2002); 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49, 54 (1990). Any reasonable doubt regarding the degree of disability should be resolved in favor of the claimant. 38 C.F.R. § 4,3. Where there is a question as to which of two evaluations shall be applied, the higher rating will be assigned if the disability picture more nearly approximates the criteria required for that evaluation. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7

GERD

The Veteran alleges that his GERD with dysphagia and history of hiatal hernia is worse, and so an increased evaluation is warranted. Currently, it is rated as 10 percent disabling.

Digestive conditions are generally rated under the Codes and criteria found in 38 C.F.R. § 4.114 (2012). Introductory language in 38 C.F.R. § 4.113 (2012) provides that because so many conditions of the digestive condition manifest in similar, overlapping symptomatology, assigning separate evaluations for multiple diagnoses constitutes prohibited pyramiding, or compensating the same symptom multiple times. 38 C.F.R. §§ 4.14, 4.113. The regulations specify that certain Codes, 7301 to 7329 (inclusive) 7331, 7342, and 7345 to 7348 (inclusive), may not be applied at the same time. Instead, the Code applicable to the dominant disability is used for evaluation, with the rating elevated to the next higher level if the overall disability picture warrants it. 38 C.F.R. § 4.114 (2012).

The Veteran is currently evaluated under Code 7346, for the hiatal hernia. This is the most appropriate Code, as the Veteran's disability is most analogous to it. 

Code 7346 provides that a 60 percent evaluation is assigned for symptoms of pain, vomiting, material weight loss and hematemesis or melena with moderate anemia; or other symptom combinations productive of severe impairment of health. A 30 percent evaluation is assigned for persistently recurrent epigastric distress with dysphagia, pyrosis, and regurgitation, accompanied by substernal or shoulder or arm pain, productive of considerable impairment of health. A 10 percent evaluation is assigned when there are two or more of the symptoms for the 30 percent evaluation of less severity. 38 C.F.R. § 4.114, Code 7346. 

On VA examination in February 2008, the Veteran reported dysphagia and denied nausea, vomiting, and bringing up food contents. He reported that he would have chest pain when food would get stuck mid-chest. That pain would go away when the food cleared out of the esophagus. He had undergone esophageal dilation two years earlier to assist him with proper swallowing of food. Poor motility had been noted. He used medication for symptom control, but they still occurred several times a month. On examination, his abdomen was soft and nontender, with normal bowel sounds. The diagnosis was GERD without evidence for hiatal hernia. 

On VA evaluation in April 2008, the Veteran had no complaints of chest pain, nausea, or vomiting, and his abdomen was soft and had normal bowel sounds and gastrointestinal findings were normal. He continued to use medication. 

On esophogram in August 2008, the Veteran had a small hiatal hernia but no evidence of obstruction, stricture, or gastroesophageal reflux, and swallowing was unremarkable. 

On VA evaluation in October 2008, the Veteran indicated that dysphagia was persisting and that he had blood on the side of his pillow and face on awakening. There was no evidence of blood on examination that day. 

Esophagogastroduodenoscopy in October 2008 was for complaints including heartburn, difficulty swallowing, and pain in the abdomen. Later that month, the Veteran reported persistent dysphagia. The Veteran reported that he would find blood on the side of his pillow and face on awakening. He denied coughing and vomiting blood. 

In June 2009, the Veteran reported dysphagia 3-4 times per week, and occasional regurgitation of liquids but none of solids. He denied nausea and vomiting. 

During the Veteran's April 2010 hearing, he indicated that his GERD is really painful and affects him all the time. Even when he drinks water, it will not go down, and sometimes it comes out very forcefully. When it happens with food, he is unable to get any nourishment. His problems included swallowing, pain, and difficulty getting anything down, but he indicated that he did not have heartburn. The problem would occur 3 or 4 times a week. He would regurgitate and throw his food across the room, but it was not vomiting. The food would go down and then stop. At night he would throw up blood on his pillow and onto the side of his face and in his ear, while he was asleep. 

On VA examination in May 2010, the Veteran reported that liquids regurgitated into his mouth, and that solids would hang anywhere in his esophagus. This was now occurring with practically every meal. After the initial food bolus would go down, swallowing was better and he could make it through the meal without further problems. He denied pyrosis as well as epigastric, substernal, and arm pain. He denied hematemesis, nausea, and vomiting. 

On VA evaluation in July 2010, the Veteran denied nausea and vomiting. He was 72 inches tall and weighed 257 pounds and his abdomen was nontender. Later in July 2010, he reported continued sporadic episodes of dysphagia 2-3 times per week to both solids and liquids. His weight had been stable and his abdomen was nontender. He was assessed with chronic dysphagia. In October 2010, he denied chest pain, nausea, vomiting, and heartburn. 

During the Veteran's May 19, 2011 hearing, he indicated that sometimes he cannot swallow, and that when this happens, the food or liquid comes out forcefully. This was occurring approximately every other meal now, whereas it used to occur about 3-4 times per month. He was throwing up and passing blood. His chest would become tight at times. As a result, his job is now more difficult. 

On VA examination in October 2011, the Veteran reported dysphagia, pyrosis, reflux, regurgitation, and substernal arm or shoulder pain as well as nausea and hematemesis but he had no anemia, weight loss, or anemia. He had a moderate Schatzki ring but had steadily increased his weight. He reported throwing away pillows due to bleeding episodes which were now occurring 2-3 times a week, and syncope would occur maybe 1-2 times a week. He reported chest pain only when food gets stuck, and that it resolves when the food passes from his esophagus. This could be explained by his esophageal spasm and GERD. 

Based on the evidence, the Board concludes that a 30 percent rating is warranted for the Veteran's GERD; the overall disability picture most closely reflects the criteria for a 30 percent evaluation. VA treatment records and the February 2008 VA examination report show continued difficulty swallowing, with reflux and resultant pain. It is unclear if the pain is truly "substernal pain" or represents physical blockage, but the impact is the same. Medication was continually required. The Veteran indicated at his hearing that at about every other meal, he could not swallow, and the food or liquid would come up forcefully. He also reported chest pain, and he indicated during his October 2011 VA examination that he had substernal pain. The Board finds that this nearly approximates the criteria for a 30 percent rating under Diagnostic Code 7346. A worsening of symptoms is shown over time, but there is no clear demarcation line showing clearly when the disability picture met the criteria for increased evaluation. All reasonable doubt is therefore resolved in favor of the Veteran. Some signs and symptoms warranting a 30 percent evaluation, greater than those for 10 percent, have been present throughout the appeals period. As the disability picture falls between the two sets of criteria, the higher evaluation is assigned. 38 C.F.R. § 4.7.

The Board further finds that a disability rating greater than 30 percent is not warranted, as the evidence does not show or nearly approximate symptoms of pain, vomiting, material weight loss, and hematemesis or melena with moderate anemia, or other symptom combinations productive of severe impairment of health. The evidence indicates that there has not been material weight loss or anemia, and no health care provider has indicated that his symptoms are productive of severe impairment of health. 

Somatoform disorder

The Veteran is service connected for somatoform disorder. The Veteran alleges worsening of the disability. Currently, it is rated as 10 percent disabling prior to October 15, 2011, and as 30 percent disabling since then. He is currently evaluated under Code 9423 for it. This is the most appropriate Code. The case had been remanded in September 2011. It was noted at the time that the Veteran's disorder had originally been rated under a Diagnostic Code that no longer existed (9502, for a psychophysiologic gastronintestinal disorder), and that in May 2008, the RO applied Diagnostic Code 8210, which was for impairment of the 10th cranial nerve. The Board noted that it appeared that the evaluations for GERD and visceral reflex syndrome overlapped. The Board ordered a VA examination for both GERD and psychiatric problems. As a result, the October 2011 VA psychiatric examination was obtained, indicating that the Veteran had undifferentiated somatoform disorder, and the RO correctly accepted in June 2012 that this should be rated in place of the previously described 10th cranial nerve impairment. The resultant rating decision and supplemental statement of the case make clear that the current evaluations are based on other than gastrointestinal problems. Consistent with the initial grant of service connection, the disability and its associated manifestations are now rated as a mental disorder.

Importantly, the correction of the selected diagnostic code, designating the disability as a psychiatric problem, continues the protected 10 percent rating, which would have been in effect for over 20 years. 38 C.F.R. § 3.951(b). As a continuation of the protected evaluation, with the same characterization and basic symptomatology, there is no reduction or discontinuance of a protected rating. Murray v. Shinseki, 24 Vet. App. 420 (2011).

The Veteran's somatoform disorder is rated under 38 C.F.R. § 4.130's General Rating Formula for Mental Disorders, under which a 10 percent rating is warranted when there is occupational and social impairment due to mild or transient symptoms which decrease work efficiency and ability to perform occupational tasks only during periods of significant stress, or; symptoms controlled by continuous medication. 

A 30 percent evaluation is warranted where there is occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks (although generally functioning satisfactorily, with routine behavior, self-care, and conversation normal), due to such symptoms as: depressed mood, anxiety, suspiciousness, panic attacks (weekly or less often), chronic sleep impairment, mild memory loss (such as forgetting names, directions, recent events). 

A 50 percent evaluation is warranted where there is occupational and social impairment with reduced reliability and productivity due to such symptoms as: flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short-and long-term memory; impaired judgment; impaired abstract thinking; disturbance of motivation and mood; difficulty in establishing and maintaining effective work and social relationships.

A 70 percent evaluation is warranted where there is occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; intermittently illogical obscure, or irrelevant speech; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a worklike setting); inability to establish and maintain effective relationships.

A 100 percent evaluation is warranted where there is total occupational and social impairment, due to such symptoms as: gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; memory loss for names of close relatives, own occupation, or own name. See 38 C.F.R. § 4.130, Diagnostic Code 9411.

The symptoms listed in VA's general rating formula for mental disorders are not intended to constitute an exhaustive list, but rather are to serve as examples of the type and degree of the symptoms, or their effects, that would justify a particular rating. Mauerhan v. Principi, 16 Vet. App. 436 (2002).

According to the applicable rating criteria, when evaluating a mental disorder, the frequency, severity, and duration of psychiatric symptoms, the length of remissions, and the Veteran's capacity for adjustment during periods of remission must be considered. 38 C.F.R. § 4.126(a) (2012). In addition, the evaluation must be based on all the evidence of record that bears on occupational and social impairment rather than solely on the examiner's assessment of the level of disability at the moment of the examination. Id. Further, when evaluating the level of disability from a mental disorder, the extent of social impairment is considered, but the rating cannot be assigned solely on the basis of social impairment. 38 C.F.R. § 4.126(b).

Global Assessment of Functioning (GAF) scores are a scale reflecting the "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." See Carpenter v. Brown, 8 Vet. App. 240, 242 (1995); see also Richard v. Brown, 9 Vet. App. 266, 267 (1996) [citing the American Psychiatric Association's DIAGNOSTIC AND STATISTICAL MANUAL FOR MENTAL DISORDERS, Fourth Edition (DSM-IV), p. 32].

GAF scores ranging between 81 and 90 reflect absent or minimal symptoms (e.g., mild anxiety before an exam), good functioning in all areas, interested and involved in a wide range of activities, socially effective, generally satisfied with life, no more than everyday problems or concerns (e.g., an occasional argument with family members). GAF scores ranging between 71 and 80 reflect that if symptoms are present they are transient and expectable reactions to psychosocial stressors (e.g., difficulty concentrating after family argument; no more than slight impairment in social, occupational, or school functioning (e.g., temporarily falling behind in schoolwork). GAF scores ranging between 61 to 70 reflect some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, and has some meaningful interpersonal relationships. Scores ranging from 51 to 60 reflect more moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co- workers). Scores ranging from 41 to 50 reflect serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational or school functioning (e.g., no friends, unable to keep a job). 

Scores ranging from 31 to 40 reflect some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up other children, is defiant at home, and is failing at school). A score from 21 to 30 is indicative of behavior which is considerably influenced by delusions or hallucinations or serious impairment in communication or judgment or inability to function in almost all areas. A score of 11 to 20 denotes some danger of hurting one's self or others (e.g., suicide attempts without clear expectation of death; frequently violent; manic excitement) or occasionally fails to maintain minimal personal hygiene (e.g., smears feces) or gross impairment in communication (e. g., largely incoherent or mute). A GAF score of 1 to 10 is assigned when the person is in persistent danger of severely hurting self or others (recurrent violence) or there is persistent inability to maintain minimal personal hygiene or serious suicidal acts with clear expectation of death. See 38 C.F.R. § 4.130 [incorporating by reference the VA's adoption of the DSM-IV, for rating purposes].

On VA examination in February 2008, the Veteran reported that fainting feelings/syncopal attacks had continued to occur about once per month, and that the symptoms would sometimes get worse under a lot of stress. He had problems with his grown kids who were currently coming home and asking for money and it had been bothersome. The diagnoses included visceral reflex syndrome with syncope symptoms persisting on a monthly basis. 

On VA evaluation in April 2008, the Veteran was negative for a depression screen. He reported that over the past 2 weeks, he had little interest or pleasure in doing things on several days, and felt down, depressed, or hopeless on several days. He denied other psychiatric symptomatology. 

On VA evaluation in March 2009, the Veteran reported little interest or pleasure in doing things several days, and feeling down, depressed, or hopeless more than half the days. 

On VA evaluation in May 2009, the Veteran denied having current thoughts about suicide or self harm; he denied a prior history of past attempts; and he denied feeling hopeless or helpless. He was judged to be a low risk for suicidal behavior and not to be a risk of self harm. 

On VA psychiatric examination in October 2011, the Veteran indicated that he was living with his wife of 19 years, had 2 adult children, and was socially active in the community and at church. He had completed a bachelor's degree in business in 1996. Since 1998, he had run two businesses that he began. He denied any problems at work other than physical limitations as he ages. He denied ever having psychiatric treatment or psychotherapy, and denied taking any psychotropic medications, but his medical records indicated an active prescription for Citalopram. There had not been a medical explanation for somatic complaints after extensive work-up. The Veteran complained of anxiety and made some unusual comments about his physical functioning, such as having apnea because he forgets to breathe while awake. He was felt to be capable of managing his financial affairs. Undifferentiated somatoform disorder was diagnosed, and the GAF was 70. The examiner indicated that a mental condition had been diagnosed, but that its symptoms were not severe enough either to interfere with occupational and social functioning or to require continuous medication. 

The Veteran's undifferentiated somatoform disorder is rated as 10 percent disabling prior to October 15, 2011. The evidence indicates that it does not warrant a rating higher than that prior to that time, as there was not occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks due to such symptoms as depressed mood, anxiety, suspiciousness, panic attacks, chronic sleep impairment, or mild memory loss. The evidence does not show that the Veteran had panic attacks, sleep impairment, or memory loss. Moreover, there is no indication that the Veteran had occasional decrease in work efficiency or intermittent periods of inability to perform occupational tasks due to somatoform disorder prior to October 15, 2011. On February 2008 VA evaluation, he reported that his symptoms would sometimes get worse under a lot of stress; he would experience syncopal episodes. On VA evaluations in April 2008 and March 2009, he denied any psychiatric symptomatology other than little interest or pleasure in doing things, and feeling down, depressed, or hopeless on occasion, and on VA evaluation in May 2009, he denied suicidal and self harm thoughts and feeling hopeless or helpless. Medication was prescribed for "mood" during this period. 

The Veteran's somatoform disorder is rated as 30 percent disabling from October 15, 2009. The evidence indicates that it does not warrant a rating higher than that from that date onward, as there has not been occupational and social impairment, with deficiencies in most areas since then. The October 2011 VA examination revealed that the Veteran was socially active in the community and at church, and that he had held the same two businesses that he had begun, for many years. He had never had any psychiatric treatment and although he was prescribed Citalopram, he indicated that he was not taking psychotropic medications. His symptoms consisted of some anxiety and making an unusual comment about his physical functioning. Furthermore, his GAF was 70, reflecting some mild symptoms or some difficulty in social, occupational, or school functioning, but generally functioning pretty well, and having some meaningful interpersonal relationships. This works against a higher rating than the presently assigned 30 percent. 

Extraschedular 

In general, the schedular disability evaluations are determined by the application of a schedule of ratings which is based on average impairment of earning capacity. 38 U.S.C.A. § 1155; 38 C.F.R. Part 4. The application of such schedular criteria was discussed above. To accord justice in an exceptional case where the schedular standards are found to be inadequate, the RO is authorized to refer the case to the Chief Benefits Director or the Director, Compensation and Pension Service for assignment of an extraschedular evaluation commensurate with the average earning capacity impairment. 38 C.F.R. § 3.321(b)(1). 

The criterion for such an award is a finding that the case presents an exceptional or unusual disability picture with such related factors as marked interference with employment or frequent periods of hospitalization as to render impractical application of regular schedular standards. Id. The Court has held that the Board is precluded by regulation from assigning an extraschedular rating under 38 C.F.R. § 3.321(b)(1) in the first instance; however, the Board is not precluded from raising this question, and in fact is obligated to liberally read all documents and oral testimony of record and identify all potential theories of entitlement to a benefit under the law and regulations. Floyd v. Brown, 9 Vet. App. 88 (1996). The Court further held that the Board must address referral under 38 C.F.R. § 3.321(b)(1) only where circumstances are presented which the Director of VA's Compensation and Pension Service might consider exceptional or unusual. Shipwash v. Brown, 8 Vet. App. 218, 227 (1995).

In Thun v. Peake, 22 Vet. App. 111 (2008), the Court clarified the analytical steps necessary to determine whether referral for extraschedular consideration is warranted. Either the RO or the Board must first determine whether the schedular rating criteria reasonably describe the Veteran's disability level and symptomatology. Id. At 115. If the schedular rating criteria do reasonably describe the Veteran's disability level and symptomatology, the assigned schedular evaluation is adequate, referral for extraschedular consideration is not required, and the analysis stops. 

If the RO or the Board finds that the schedular evaluation does not contemplate the Veteran's level of disability and symptomatology, then either the RO or the Board must determine whether the Veteran's exceptional disability picture includes other related factors such as marked interference with employment and frequent periods of hospitalization. Id. at 116. If this is the case, then the RO or the Board must refer the matter to the Under Secretary for Benefits or the Director of the Compensation and Pension Service for the third step of the analysis, determining whether justice requires assignment of an extraschedular rating. Id. 

In this case, the symptoms described by the Veteran fit squarely within the criteria found in the relevant Diagnostic Codes for the disabilities at issue. In short, the rating criteria contemplate not only his symptoms but the severity of his disabilities. For these reasons, referral for extraschedular consideration is not warranted.

Last, whether there is a claim for a total disability rating based on individual unemployability (TDIU) under Rice v. Shinseki, 22 Vet. App. 447 (2009) has been considered. None of the VA medical records or statements from the Veteran indicate that he is unemployable due to his service-connected GERD or somatoform disorder disabilities. To the contrary, the Veteran has indicated that he runs two of his own businesses, and has done so for years. Accordingly, consideration of a TDIU claim pursuant to Rice is not warranted.

The preponderance of the evidence is against higher ratings than those indicated herein and there is no doubt to be resolved. 


ORDER

An increased evaluation of 30 percent for service-connected GERD with dysphagia and history of hiatal hernia, but no higher, is granted. 

An evaluation in excess of 10 percent for service-connected somatoform disorder prior to October 15, 2011 is denied. 

An evaluation in excess of 30 percent for service-connected somatoform disorder from October 15, 2011 is denied.



______________________________________________
WILLIAM H. DONNELLY
Acting Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs