Citation Nr: 1434258 
Decision Date: 07/31/14 Archive Date: 08/04/14

DOCKET NO. 08-05 248 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Columbia, South Carolina


THE ISSUE

1. Entitlement to a rating in excess of 10 percent for residuals of a right knee anterior cruciate ligament (ACL) tear and meniscectomy from August 15, 2009 forward.

2. Entitlement to a compensable rating for arthritis in the right knee from August 15, 2009 forward.


REPRESENTATION

Appellant represented by: Disabled American Veterans


ATTORNEY FOR THE BOARD

A.P. Armstrong, Associate Counsel


INTRODUCTION

The Veteran served on active duty from December 2003 to August 2008; and five months and 16 days of prior active duty.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a September 2007 rating decision issued by the Department of Veterans Affairs (VA) Regional Office (RO) in Columbia, South Carolina, which denied entitlement to an increased rating for the service connected right knee disability.

In April 2011 and June 2013, the Board also denied entitlement to an increased rating for the right knee disability. These decisions were appealed to the United States Court of Appeals for Veterans Claims (Court). Pursuant to joint motions for remand (joint motions), the Court vacated the Board's decisions and remanded the appeal to the Board.



FINDINGS OF FACT

1. The Veteran had moderate instability, locking, buckling, and effusion from August 15, 2009 to April 9, 2013.

2. The Veteran has arthritis in his right knee manifested by painful but noncompensable limitation of flexion.


CONCLUSIONS OF LAW

1. The criteria for a rating of 20 percent for right knee instability and locking from August 15, 2009 to April 9, 2013 have been met. 38 U.S.C.A. § 1155; 38 C.F.R. §§ 4.71a, Diagnostic Codes (DC) 5257 (2013).

2. The criteria for a rating of 10 percent, but not higher, for right knee arthritis with associated pain have been met for the entire period on appeal. 38 U.S.C.A. § 1155; 38 C.F.R. §§ 4.71a, Diagnostic Codes (DC) 5010-5261 (2013).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veterans Claims Assistance Act of 2000 (VCAA) and implementing regulations require VA to provide claimants with notice and assistance in substantiating a claim. See 38 U.S.C.A. §§ 5102, 5103, 5103A, 5107 (West 2002 & Supp. 2013); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2013).

In July 2007, the RO sent the Veteran a letter providing notice, which satisfied the requirements of the VCAA. The letter was prior to adjudication of his claims and explained the basis for assigning ratings and effective dates. Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006). No additional notice is required. 

Next, VA has a duty to assist the Veteran in the development of claims. This duty includes assisting him in the procurement of pertinent treatment records and providing an examination when necessary. 38 C.F.R. § 3.159.

All pertinent, identified medical records have been obtained and considered. VA provided an examination for the Veteran's right knee in April 2013. This examination addressed the pertinent rating criteria and there is no argument or indication that it is inadequate for this decision. The Board finds that there is no additional development necessary. 

As there is no further notice or assistance that would be reasonably likely to assist the Veteran in substantiating the claims being decided; VA's VCAA duties have been satisfied. See 38 U.S.C.A. §§ 5103, 5103A; 38 C.F.R. §3.159.

The most recent Joint Motion found that the Board had erred by not considering entitlement to a an additional, albeit staged, rating under either Diagnostic Code 5257 or 5258, based on findings of instability on an August 2009 examination; and that the Board had erred by failing to "properly consider" whether separate ratings under Diagnostic Codes 5259 and 5260 would actually constitute pyramiding. This decision attempts to comply with the remand instructions by granting a separate staged rating under Diagnostic Code 5257, and further discussing entitlement to a separate rating under Diagnostic Code 5259.

I. Rating Analysis

Disability ratings are determined by applying the criteria set forth in the VA Schedule for Rating Disabilities, found in 38 C.F.R., Part 4. The percentage ratings are based on the average impairment of earning capacity as a result of a service-connected disability, and separate diagnostic codes identify the various disabilities and the criteria for specific ratings. 38 U.S.C.A. § 1155; 38 C.F.R. § 4.1. 

If two disability evaluations are potentially applicable, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria for that rating; otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. All reasonable doubt as to the degree of disability will be resolved in favor of the claimant. 38 U.S.C.A. § 5107(b); 38 C.F.R. § 4.3. 

The evaluation of the same disability under several diagnostic codes, known as pyramiding, must be avoided; however, separate ratings may be assigned for distinct disabilities resulting from the same injury so long as the symptomatology for one condition is not duplicative of or overlapping with the symptomatology of the other condition. Esteban v. Brown, 6 Vet. App. 259, 262 (1994); 38 C.F.R. § 4.14. The rating schedule may not be employed to compensating a claimant twice for the same disability. Brady v. Brown, 4 Vet. App. 203, 205-6 (1993). The critical element for determining that separate ratings are warranted is that none of the symptomatology for one condition is duplicative of the other. Esteban v. Brown, at 262.

Where entitlement to compensation has already been established and an increase in the disability rating is at issue, the primary concern is the present level of disability. Francisco v. Brown, 7 Vet. App. 55, 58 (1994). However, the Board must also consider staged ratings, which are appropriate when the evidence establishes that the claimed disability manifested symptoms that would warrant different ratings for distinct time periods during the appeal. Hart v. Mansfield, 21 Vet. App. 505, 509-10 (2007). 

The Veteran's knee has been rated under 38 C.F.R. § 4.71a, Diagnostic Code (DC) 5259 for symptoms of removal of the semilunar cartilage in the knee. He was granted the sole, 10 percent disability based on this diagnostic code and a meniscectomy during service. 

The record shows that the Veteran also tore his ACL in service and currently has arthritis in his right knee. The Board must determine if the Veteran could receive a higher rating for his right knee disability under analogous diagnostic codes. See Schafrath v. Derwinski, 1 Vet. App. 589, 593 (1991). The Board has discretion to assign the diagnostic code that most adequately rates a veteran's symptoms as long as the rating was assigned less than 20 years prior and the veteran will not be prejudiced. See Read v. Shinseki, 651 F.3d 1269 (Fed. Cir. 2011); Murray v. Shinseki, 24 Vet. App. 420 (2011). 

Here, the Board finds that assignment of ratings under Diagnostic Codes 5010, for arthritis, and 5258, for joint effusion and instability, are most appropriate. The Veteran will not be prejudiced, because this decision grants a higher disability rating than is available under the original diagnostic code. Additionally, this decision grants separate ratings under two diagnostic codes for the knee. The language of the current Diagnostic Code 5259 is broad, that of any symptoms associated with removal of the semilunar cartilage. VA could not assign a rating under this diagnostic code and another for the knee without constituting pyramiding because of this broad language. See Esteban, 6 Vet. App. at 262; 38 C.F.R. § 4.14.

Arthritis is rated based on limitation of motion. See 38 C.F.R. § 4.71a, DC 5003-5010. There are two separate diagnostic codes for range of motion in the knee. Diagnostic Code 5261 applies to limitation of extension and allows for a compensable rating for extension limited to 5 degrees and higher ratings for greater limitation. See 38 C.F.R. § 4.71a; DC 5261. Limitation of knee flexion is rated under Diagnostic Code 5260, which allows for a compensable rating when flexion is limited to 60 degrees and higher ratings with greater limitation. See id at DC 5260. 

Disabilities of the musculoskeletal system that are evaluated on the basis of limitation of motion are subject to provisions of 38 C.F.R. §§ 4.40, 4.45, pertaining to functional impairment due to pain, flare-ups, etcetera. See Mitchell v. Shinseki, 25 Vet. App. 32 (2011); DeLuca v. Brown, 8 Vet. App. 202 (1995); see also Johnston v. Brown, 10 Vet. App. 80, 84-5 (1997); 38 C.F.R. § 4.59 (2006). 

Where limitation of motion is not compensable under DC 5260 or 5621, a minimum compensable rating may be granted for arthritis under § 4.59, if it is productive of actually painful motion due to unstable or mal-aligned joints due to healed injury. VAOGCPREC 9-98 (August 14, 1998), 63 Fed. Reg. 56704 (1998).

Concerning instability and the ACL tear, Diagnostic Code 5257 provides for a 10 percent rating for slight recurrent subluxation or lateral instability, a 20 percent rating for moderate recurrent subluxation or lateral instability, and a 30 percent rating for severe recurrent subluxation or lateral instability. 38 C.F.R. § 4.71a.

Concerning dislocation of the semilunar cartilage (meniscus), Diagnostic Code 5258 provides for a 20 percent rating for frequent episodes of locking, pain, and effusion into the joint. 38 C.F.R. § 4.71a.

VA's General Counsel has held that a claimant who has arthritis and instability of the knee may be rated separately under Diagnostic Codes 5003 or 5010 and 5257 without constituting pyramiding. VAOPGCPREC 23-97; 62 Fed. Reg. 63,604 (1997). There is no guidance as to whether arthritis and symptoms of dislocated semilunar cartilage could be rated separately. However, as one diagnostic code accounts for pain and limitation of motion and the other for locking and effusion into the joint, they appear to address separate symptoms, which would not constitute pyramiding if both were applied. 

Following, a 10 percent rating for symptoms of arthritis is appropriate for the entire period on appeal, and a separate 20 percent rating is appropriate for symptoms of instability, locking, and effusion from August 15, 2009 to April 9, 2013. 

The arthritis in the Veteran's right knee warrants a 10 percent rating, but not higher, throughout the period on appeal. See 38 C.F.R. § 4.71a, DC 5003-5260. 

The evidence shows that the Veteran has arthritis in his knee with some limited flexion and associated pain. The April 2013 VA examination and treatment records from August 2009 note osteoarthritis in the right knee. During the April 2013 VA examination, the examiner recorded flexion limited to 100 degrees and limited to 95 degrees after repetitive use. Normal knee flexion is to 140 degrees. See 38 C.F.R. § 4.71a, Plate II. Statements from the Veteran to VA and during treatment note pain in the right knee particularly with running or strenuous activities. As the Veteran has arthritis with some limitation of motion and pain, the minimum, 10 percent rating is warranted. VAOGCPREC 9-98 (August 14, 1998), 63 Fed. Reg. 56704 (1998); see also 38 C.F.R. § 4.59.

However, the evidence does not show that the Veteran has limitation of flexion or extension to warrant a rating in excess of 10 percent. As discussed, the April 2013 VA examiner recorded right knee flexion limited to 95 degrees and normal extension, zero degrees. Ratings in excess of 10 percent would require flexion limited to 45 degrees or less or extension limited to 10 degrees or more. See 38 C.F.R. § 4.71a, DC 5260, 5261. The Veteran has not reported, and the VA examination did not document, any symptoms which could cause additional functional impairment (limitation of motion) approximating the criteria for a rating in excess of 10 percent. Cf. DeLuca. Although flare-ups were reported at the April 2013 examination, the impact was that the Veteran stopped exercising for several days, no additional limitation of motion was reported. Therefore, the Veteran's right knee arthritis does not warrant a rating in excess of 10 percent for arthritis symptoms. See 38 C.F.R. § 4.71a. 

Symptoms of locking, buckling, and joint effusion warrant a separate 20 percent rating for the period from August 15, 2009 to April 9, 2013. See 38 C.F.R. § 4.71a, DC 5258. 

The evidence shows the Veteran injured his knee and was treated at a service department facility on August 18, 2009. During treatment, the Veteran reported stiffness, intermittent knee locking, and sudden buckling of his right knee. The treatment provider recorded positive Lachman's and McMurray's instability tests, as well as effusion. The treatment record lists ACL sprain and acute meniscal tear. The symptoms at the time of this treatment record met the criteria for a 20 percent rating under Diagnostic Code 5258. See 38 C.F.R. § 4.71a. Although these records are dated August 18, the Joint Motion specified that the period for consideration begins August 15.
 
The Lachman's test addresses anterior instability, which is associated with the ACL. See Treatment record 8/09. The provider in August 2009 noted that the Lachman test demonstrated one plane anterior instability, as opposed to a fully positive finding of anterior instability. The examiner did not opine as to the severity of the instability, but there was no weakness on examination, drawer's signs were negative and the Veteran was able to ambulate with evidence of tenderness. There was no subluxation inasmuch as the there was no misalignment and no abnormality of the patella was reported. A 20percent rating could be provided under Diagnostic Code 5257 based on evidence of at most moderate instability. See 38 C.F.R. § 4.71a. 

As discussed above, the Veteran's symptoms from this period warrant a 20 percent rating under Diagnostic Code 5258. The rating criteria contemplate pain. This symptom is also contemplated in the rating under Diagnostic Code 5260 for limitation of motion. 38 C.F.R. §§ 4.40, 4.45, 4.59; DeLuca. Hence the symptoms are not wholly separate. See Esteban, 6 Vet. App. at 262; 38 C.F.R. § 4.14. Therefore, a 20 percent rating under Diagnostic Code 5257 is assigned. 

The Veteran's right knee does not warrant a compensable rating under Diagnostic Codes 5258 or 5257 after April 9, 2013. The April 10, 2013 VA examiner noted that the Veteran regularly used a knee brace on his right knee for pain; however, there was no evidence of instability at the time of the VA examination. The examiner recorded normal anterior, posterior, and medial-lateral stability. There was also no evidence of locking or effusion into the joint. The examiner found no residual symptoms from the meniscectomy. The examiner noted no evidence or history of recurrent patellar subluxation or dislocation. The Veteran reported pain but did not report any additional symptoms after August 2009. The Veteran's pain symptoms are considered with his 10 percent rating under Diagnostic Code 5010-5260. 

The Joint Motion raises the question of whether it would truly be pyramiding to provide a separate rating under Diagnostic Code 5259 in addition to 5260. The 10 percent rating under Diagnostic Coed 5259 is provided for a symptomatic knee after removal of the semilunar cartilage. The Veteran's knee is symptomatic, but those symptoms are compensated under Diagnostic Code 5260 and 5257. A separate rating under Diagnostic Code 5259 would mean that he would be compensated for the same symptoms under multiple codes and would clearly constitute pyramiding.

All other diagnostic codes have been considered. The Veteran could not receive a higher rating under any analogous code; there is no evidence of anklyosis or tibia and fibula impairment. See 38 C.F.R. § 4.71a.

The Board has also considered whether this case should be referred for extra-schedular consideration pursuant to 38 C.F.R. § 3.321(b)(1). However, this case does not present such an exceptional or unusual disability picture that it would be impracticable to apply the schedular standards, and referral is unnecessary. See Thun v. Peake, 22 Vet. App. 111, 115-16 (2008). Rather, the manifestations of the Veteran's right knee disability are fully contemplated by the schedular rating criteria. Specifically, the rating criteria address instability, locking, effusion, limitation of motion, and pain. The evidence that the Veteran wears a brace goes to his symptoms of pain, which are fully contemplated by this decision. Accordingly, referral for consideration of an extra-schedular rating is not necessary. See Thun, 22 Vet. App. at 115-16.

The preponderance of the evidence supports a rating of 10 percent for symptoms of right knee arthritis for the entire period on appeal and 20 percent rating for symptoms of instability, effusion, locking, and buckling for the period from August 15, 2009 to April 9, 2013, but not any higher rating. See 38 C.F.R. § 4.71a. As such, the benefit of the doubt doctrine is inapplicable, and the outstanding claim is denied. See 38 C.F.R. §§ 4.3, 4.71a. 

Although entitlement to a total rating for compensation based on individual unemployability (TDIU) is a potential element of all claims for increase; the Veteran has not reported unemployability due to service connected disability, (although on one occasion in April 2010, he reported difficulty finding work); the remainder of the record contains no such reports; and the most recent examiner found that the knee disability did not impact employment. Absent evidence of unemployability, TDIU is not raised. Jackson v. Shinseki, 587 F.3d 1106, 1109-10 (Fed. Cir. 2009). 


ORDER

A rating of 10 percent, but not higher, for symptoms of right knee arthritis from August 15, 2009 forward is granted.

A 20 percent rating, for symptoms of instability, locking, buckling, and effusion for the period from August 15, 2009 to April 9, 2013 is granted.




____________________________________________
Mark D. Hindin
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs