Citation Nr: 1518704 
Decision Date: 04/30/15 Archive Date: 05/05/15

DOCKET NO. 11-10 444 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Philadelphia, Pennsylvania


THE ISSUES

1. Entitlement to an increased rating for post-operative excision, loose body right knee, torn cartilage, rated 10 percent prior to April 7, 2009.

2. Entitlement to a separate compensable rating for right knee lateral instability prior to April 7, 2009.

3. Entitlement to an increased rating for right total knee replacement associated with post-operative excision, loose body right knee, torn cartilage, rated 30 percent from June 1, 2010.

4. Entitlement to a total disability rating based on individual unemployability (TDIU) prior to June 1, 2010.


REPRESENTATION

Appellant represented by: Vietnam Veterans of America

WITNESSES AT HEARING ON APPEAL

Appellant and his spouse


ATTORNEY FOR THE BOARD

J. Hager, Counsel


INTRODUCTION

The Veteran served on active duty from December 1972 to July 1987.

This case initially came before the Board of Veterans' Appeals (Board) from a January 2009 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Philadelphia, Pennsylvania. In that decision, the RO granted an increased, 10 percent rating, but no higher, for the Veteran's right knee disability.

In March 2010, during the pendency of the claim, the RO granted entitlement to service connection for right total knee replacement and assigned a temporary total rating from April 7, 2009 to June 1, 2010, and a 30 percent rating from that date. As the Veteran has not indicated satisfaction with the current right knee ratings exclusive of the period from April 7, 2009 to June 1, 2010 (during which time the maximum 100 percent rating was in effect), the increased ratings claims listed on the title page remain in appellate status. See AB v. Brown, 6 Vet. App. 35, 38 (1993).

In March 2011, the RO granted entitlement to a TDIU effective June 1, 2010. For the reasons indicated below, the issue of entitlement to a TDIU prior to that date remains on appeal.

In May 2013, the Veteran testified during a hearing at the RO before the undersigned; a transcript of that hearing is of record. In February 2014, the Board remanded the case to the agency of original (AOJ) for additional development. For the reasons indicated below, the AOJ complied with the Board's remand instructions. Stegall v. West, 11 Vet. App. 268, 271 (1998).

The issue of entitlement to a TDIU prior to June 1, 2010 is addressed in the REMAND portion of the decision below and is REMANDED to the Agency of Original Jurisdiction (AOJ).


FINDINGS OF FACT

1. Prior to April 7, 2009, the Veteran's right knee disability picture most nearly approximated symptomatic removal of semilunar cartilage.

2. Prior to April 7, 2009, the Veteran's right knee disability picture included mild laxity.

3. Prior to April 7, 2009, the Veteran's right knee disability did not cause limitation of flexion to 60 degrees or extension to 5 degrees.

4. From June 1, 2010, the evidence is at least evenly balanced as to whether symptoms due to the Veteran's right knee replacement more nearly approximated chronic residuals consisting of severe painful motion.


CONCLUSIONS OF LAW

1. The criteria for a rating higher than 10 percent for post-operative excision, loose body right knee, torn cartilage, prior to April 7, 2009, have not been met. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.159, 3.321, 4.1, 4.2, 4.3, 4.7, 4.71a, Diagnostic Code (DC) 5259 (2014).

2. The criteria for a separate rating of 10 percent, but no higher, for right knee lateral instability have been met. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107; 38 C.F.R. §§ 3.159, 3.321, 4.1, 4.2, 4.3, 4.7, 4.71a, DC 5257.

3. From June 1, 2010, the criteria for the maximum 60 percent rating for knee replacement have been met. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107; 38 C.F.R. §§ 3.159, 3.321, 4.1, 4.2, 4.3, 4.7, 4.71a, DC 5055.


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Veterans Claims Assistance Act

The Veterans Clams Assistance Act of 2000 (VCAA) and implementing regulations impose obligations on VA to provide claimants with notice and assistance. 38 U.S.C.A. §§ 5103, 5103A; 38 C.F.R. § 3.159. The requirements of the statutes and regulation have been met in this case. VA notified the Veteran in April and September 2009 of the information and evidence needed to substantiate and complete a claim, to include notice of what part of that evidence is to be provided by the claimant, what part VA will attempt to obtain, and how disability ratings and effective dates are determined. The RO also provided additional information in these letters regarding disability ratings and the criteria applicable to the Veteran's increased rating claim in compliance with a decision of the Court that was subsequently vacated by the Federal Circuit. See Vazquez-Flores v. Peake, 22 Vet. App. 37 (2008), vacated sub nom. Vazquez-Flores v. Shinseki, 580 F.3d 1270 (Fed. Cir. 2009). The case was most recently readjudicated in the August 2014 supplemental statement of the case (SSOC).

VA fulfilled its duty to assist the Veteran in obtaining identified and available evidence needed to substantiate a claim and affording him multiple VA examinations which, as indicated by the discussion below, were adequate to decide the claims. In its February 2014 remand, the Board instructed that the AOJ send a letter to the Veteran requesting that he provide information regarding private treatment and that the AOJ request the records of the Social Security Administration's (SSA's) disability determination. The AOJ sent such a letter in March 2014 and obtained the SSA records, and therefore complied with the Board's remand instructions. There is no evidence that additional records have yet to be requested, or that additional examinations are in order.

Finally in this regard, during the May 2013 Board hearing, the undersigned explained the issues on appeal and, along with the Veteran's representative, asked questions that suggested the submission of evidence that may have been overlooked. These actions provided an opportunity for the Veteran and his representative to introduce material evidence and pertinent arguments, in compliance with 38 C.F.R. § 3.103(c)(2) and consistent with the duty to assist. See Bryant v. Shinseki, 23 Vet. App. 488, 492 (2010).

The Board will therefore proceed to the merits of the claims being decided herein.

Analysis

Disability evaluations are determined by evaluating the extent to which a Veteran's service-connected disability adversely affects his ability to function under the ordinary conditions of daily life, including employment, by comparing his symptomatology with the criteria set forth in the Rating Schedule. 38 U.S.C.A. § 1155; 38 C.F.R. §§ 4.1, 4.2, 4.10. If two evaluations are potentially applicable, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that evaluation; otherwise, the lower evaluation will be assigned. 38 C.F.R. § 4.7.
 
In order to evaluate the level of disability and any changes in condition, it is necessary to consider the complete medical history of the Veteran's condition. Schafrath v. Derwinski, 1 Vet. App. 589, 594 (1991). Where, as here, entitlement to compensation has already been established and an increase in the disability rating is at issue, the present level of disability is of primary concern. Francisco v. Brown, 7 Vet. App. 55 (1994). Staged ratings are appropriate for any rating claim when the factual findings show distinct time periods during the appeal period where the service-connected disability exhibits symptoms that would warrant different ratings. Hart v. Mansfield, 21 Vet. App. 505 (2007). Here, the Veteran is receiving staged ratings for the periods of time prior to and after the temporary total rating that he received for his right knee replacement and hospitalization.

Prior to April 7, 2009
 
The 10 percent rating the Veteran is receiving prior to April 7, 2009 is pursuant to 38 C.F.R. § 4.71a, DC 5259. DC 5259 provides for a single 10 percent rating for removal of symptomatic semilunar cartilage. As this is the only rating under DC 5259, there is no basis for a higher rating under this diagnostic code. The issue in this regard is whether prior to April 7, 2009 the Veteran is entitled to a separate or higher rating under any other potentially applicable diagnostic code. See Schafrath, 1 Vet. App. at 593 (regardless of the precise basis of a veteran's disability rating, the Board has a duty to acknowledge and consider all regulations and diagnostic codes that are potentially applicable).

With regard to disabilities of the knee, DC 5256 provides for ratings for ankylosis. DC 5257, applicable to other impairment of the knee, provides for ratings for recurrent subluxation or lateral instability, 10 percent if it is slight, 20 percent if it is moderate, and 30 percent if it is severe. DC 5258 provides for a single 20 percent rating for dislocated semilunar cartilage with frequent episodes of locking, pain, and effusion into the joint. DCs 5260 and 5261 provide for ratings for limitation of flexion and extension of the leg. DC 5262 provides for ratings for impairment of the tibia and fibula. DC 5263 provides for a 10 percent rating for genu recurvatum.

When considering separate ratings under different diagnostic codes generally, VA must avoid pyramiding, i.e., evaluating the same disability under different diagnostic codes or evaluating the same manifestation under different diagnostic codes. 38 C.F.R. § 4.14. A veteran who has limitation of motion and instability of the knee may be evaluated separately under separate diagnostic codes provided additional disability is shown. VAOPGCPREC 23-97 (July 1, 1997); VAOGCPREC 9-98 (August 14, 1998). Limitation of motion may be a relevant consideration under DC 5259. VAOGCPREC 9-98.

Normal range of motion of the knee is to 0 degrees extension and to 140 degrees flexion. 38 C.F.R. § 4.71a, Plate II. Under DC 5260, the following ratings are assigned for limitation of flexion: 0 percent for 60 degrees; 10 percent for 45 degrees; 20 percent for 30 degrees; and 30 percent for 15 degrees. Under DC 5261, the following ratings are assigned for limitation of extension: 0 percent for 5 degrees; 10 percent for 10 degrees; 20 percent for 15 degrees; 30 percent for 20 degrees; 40 percent rating for 30 degrees; and 50 percent for 45 degrees. Separate ratings may be warranted for limitation of flexion and extension when the criteria for compensable ratings are met for such limitation under DCs 5260 and 5261. VAOPGCPREC 9-2004 (Sept. 17, 2004). 

In addition, when assessing the severity of a musculoskeletal disability that is at least partly rated on the basis of limitation of motion, VA must also consider the extent that the veteran may have additional functional impairment above and beyond the limitation of motion objectively demonstrated, such as during times when his symptoms are most prevalent ("flare-ups") due to the extent of his pain (and painful motion), weakness, premature or excess fatigability, and incoordination. DeLuca v. Brown, 8 Vet. App. 202, 204-7 (1995); 38 C.F.R. §§ 4.40, 4.45, 4.59.

During service, the Veteran underwent multiple right knee surgeries, including a partial medial meniscectomy in 1978. The term meniscus is synonymous with semilunar cartilage. See VAOPGCPREC 9-98 (citing Robert Bruce Salter, Textbook of Disorders and Injuries of the Musculoskeletal System 531-32 (2d ed. 1983)). The primary piece of medical evidence for the period prior to April 7, 2009 is the December 2008 VA examination. On that examination, the Veteran complained of constant dull pain, for which he used a morphine patch that did not help. He indicated that his right knee gave way but did not lock. He did not use a brace, cane, crutches, or walker. The Veteran stated that he would not be able to perform his occupation as an auto mechanic due to his knee disability, as lifting objects in excess of 10 pounds frequent kneeling standing for more than 10 minutes, walking for more than 5 minutes and frequent bending working as an auto mechanic would result in flare ups. The Veteran also noted that his activities of daily living were not affected by his knee disability. Range of motion was 0 degrees extension to 100 degrees flexion with pain at the end of extension and from 90 to 100 degrees flexion. On repetitive use testing, range of motion was not additionally limited by pain, fatigue, weakness, or lack of endurance. The Veteran stated that he experienced flare-ups with change in temperature, lifting objects heavier than 10 pounds, walking for more than 5 minutes, climbing more than 1 flight of stairs, riding in a car for more than 15 minutes, kneeling, and standing for more than 10 minutes. He could not run at all during flare-ups. The flare-ups caused pain of 10 on a scale of 10, occurred daily, and lasted about 2 hours. The flare-ups caused an additional 20 percent limitation of function of the Veteran's daily activities. Stability testing was negative but there was mild laxity in the knee joint. Gait was normal, and the diagnosis was residuals of multiple right knee surgeries, mild to moderately active at the time of examination.

In addition a February 2009 St. Mary Medical Center X-ray indicated moderate to severe degenerative joint disease in the medial compartment with cartilage space narrowing subchondral sclerosis and osteophyte formation along with pointing of the tibial spines. The lateral compartment and the patellofemoral joint space were preserved. There was a tiny osteophyte on the superior margin of the articular surface of the patella, and no evidence of fracture dislocation or other osseous or articular abnormality. The diagnosis was moderate to severe arthritis in the medial compartment cartilage space. 

The above reflects that rating under DC 5259 is appropriate. The service treatment records reflect that the Veteran underwent a partial meniscectomy and neither the post service treatment records nor December 2008 VA examination report indicate that there was dislocated, as opposed to removed, semilunar cartilage. The February 2009 X-ray indicated that there was cartilage space narrowing and not that the cartilage was dislocated. Moreover, there was no locking or effusion into the joint. There is therefore no basis for a 20 percent rating under DC 5258.

As to whether a separate or higher rating is warranted under DCs 5260 or 5261, the rating under DC 5259 is for symptomatic removal of semilunar cartilage, and one of these symptoms is the noncompensable limitation of motion indicated on the December 2008 VA examination range of motion studies. A 10 percent rating is warranted under DC 5003 for arthritis for limitation of motion when it is noncompensable under the appropriate diagnostic codes, i.e., DCs 5260 and 5261, and confirmed by evidence of painful motion. Because the noncompensable limitation of motion is a basis for the 10 percent rating under DC 5259, a separate 10 percent rating under DCs 5003, 5260, and 5261 would constitute pyramiding, which is impermissible. 38 C.F.R. § 4.14. Such a separate rating is therefore not warranted in this case.

The Board must nevertheless determine whether a rating higher than 10 percent is warranted under DCs 5260 and 5261, which could replace the 10 percent rating under DC 5259, as that would be more favorable to the Veteran and the 10 percent rating has been in effect for fewer than 10 years. Cf. Read v. Shinseki, 651 F.3d 1296 (Fed. Cir. 2011); Murray v. Shinseki, 24 Vet. App. 420 (2011) (discussing statute and regulation prohibiting changes in protected ratings, i.e., those in effect for more than 10 or 20 years). For the following reasons, the Board finds that a higher rating is not warranted under DC 5260 or 5261. The only range of motion findings for the relevant time period are those on the December 2008 VA examination, on which range of motion was 0 degrees extension to 100 degrees flexion. This would not warrant a compensable rating under either DC 5260 or DC 5261. In addition, although there was pain at the end of extension and at 90 degrees flexion, neither VAOPGCPREC 9-2004 nor any precedential decision of the Court has indicated that separate 10 percent ratings are warranted under DCs 5003, 5260, and 5261 for painful motion on both extension and flexion of the knee, as opposed to a single 10 percent rating for painful motion of the knee under these diagnostic codes. Rather, such separate ratings, being based on the same symptomatology, would constitute pyramiding. Therefore even though there was painful motion on both extension and flexion, there is no basis for such separate 10 percent ratings under in this case.

The Board must also consider whether there was additional limitation of motion during flare-ups that would warrant higher ratings under DC 5260 or 5261. The above evidence reflects that the Veteran experiences significant flare-ups, including an estimated loss of 20 percent limitation of function of the Veteran's daily activities. However, given that range of motion was from normal extension (0 degrees) to 100 degrees flexion, with pain at the end of extension and at 90 degrees flexion, the Veteran had significantly more motion in the knee than either the 5 degrees extension or 60 degrees flexion required for even noncompensable ratings under DCs 5260 and 5261. The Board therefore finds that the additional limitation during flare-ups, including 20 percent limitation of function of daily activities, does not result in range of motion that more nearly approximates the criteria for compensable ratings under DC 5260 or 5261 warranting any higher rating under these diagnostic codes than the Veteran is receiving under DC 5259.

As to DC 5257, however, on the December 2008 VA examination, the Veteran indicated that he experienced giving way and the VA examiner noted mild laxity. As these symptoms approximate the slight lateral instability required for a 10 percent rating under DC 5257, a separate 10 percent rating is warranted. A higher rating is not, however, warranted under DC 5257 because there is no indication in either the lay or medical evidence discussed above that the symptoms more nearly approximated the moderate instability required for a 20 percent rating.

In addition, no separate or higher rating is warranted under DC 5256, 5262, or 5263, because neither the lay nor medical evidence reflects that there has been ankylosis, impairment of the tibia and fibula, or genu recurvatum.

From June 1, 2010

From June 1, 2010, the Veteran's right knee disability is rated under 38 C.F.R. § 4.71a, DC 5055. Under DC 5055, a 100 percent rating is warranted for one year following implantation of the prosthesis, as was awarded in this case. Following this period, the minimum rating is 30 percent.

A 60 percent rating is assigned for chronic residuals consisting of severe painful motion or weakness in the affected extremity. Intermediate degrees of residuals weakness, pain, or limitation of motion are rated by analogy to diagnostic codes 5256, 5261, or 5262.

The first question the Board must answer is therefore whether the replacement surgery residuals more closely resemble an intermediate degrees of weakness, pain, or limitation of motion or are chronic with severe painful motion or weakness. The terms severe and intermediate are not defined in the regulation.

On the November 2009 VA examination, the Veteran complained of severe constant pain. As it related to his occupation as a mechanic and also to activities of daily living, the Veteran indicated that he had difficulty in prolonged standing and walking more than ten minutes walking up and down steps and climbing as well as squatting due to bilateral knee pain.

A July 2010 treatment note of Dr. "H.B." noted pain and stiffness since the knee replacement. The pain was characterized as intolerable and there was also locking, clicking, swelling, and giving way. X-ray showed a total right knee arthroplasty in reasonable position with potential loosening. 

On the November 2012 VA examination, the Veteran complained of constant pain and flare-ups with prolonged standing and walking.

During the May 2013 Board hearing, the Veteran and his wife testified that his right knee replacement surgery had been unsuccessful and that the knee was extremely painful and sometimes prevented him from standing and was incapacitating. The Veteran similarly indicated in his written statements that he experienced severe pain and painful motion of the knee.

Range of motion on the VA examinations was 0 to 90 degrees and it was 5 to 85 degrees on Dr. H.B.'s July 2010 examination. However, given the Veteran's competent and credible statements on examination and in his written statements and Board hearing testimony that he has experienced constant and significant pain and painful motion as well as other symptoms since the knee replacement surgery, the Board finds that the evidence is at least evenly balanced as to whether the Veteran's right knee replacement residuals are chronic with severe painful motion or weakness.

As the reasonable doubt created by this approximate balance of the evidence must be resolved in favor of the Veteran, a 60 percent rating is warranted for severe painful motion residual to right total knee replacement associated with post-operative excision, loose body right knee, torn cartilage from June 1, 2010. 38 U.S.C.A. § 5107(b); 38 C.F.R. § 4.3. As there is no higher schedular rating available for the right knee disability under any potentially applicable diagnostic code, further discussion of whether the Veteran is entitled to a higher schedular rating for this disability is unnecessary.

Extraschedular

Consideration of whether an extraschedular rating is warranted requires a three-step inquiry. See Thun v. Peake, 22 Vet. App. 111 (2008), aff'd sub nom. Thun v. Shinseki, 572 F.3d 1366 (Fed. Cir. 2009). The first question is whether the schedular rating criteria adequately contemplate the Veteran's disability picture. Thun, 22 Vet. App. at 115. If the criteria reasonably describe the claimant's disability level and symptomatology, then the claimant's disability picture is contemplated by the rating schedule, the assigned schedular evaluation is, therefore, adequate, and no referral is required. Id. If the schedular evaluation does not contemplate the claimant's level of disability and symptomatology and is found inadequate, then the second inquiry is whether the claimant's exceptional disability picture exhibits other related factors such as those provided by the regulation as governing norms. Id. at 115-116. If the Veteran's disability picture meets the second inquiry, then the third step is to refer the case to the Under Secretary for Benefits or the Director of Compensation Service to determine whether an extraschedular rating is warranted. Id. at 116.

The discussion above reflects that the symptoms of the Veteran's right knee disability are fully contemplated by the applicable rating criteria. As discussed above, prior to April 7, 2009, there were multiple diagnostic codes that addressed various possible knee symptoms and the Board considered each of these diagnostic codes. In addition, since June 2010, the applicable diagnostic code considered severe painful motion, weakness, and intermediate degrees of residuals weakness, pain, or limitation of motion. These criteria are broad enough to encompass all of the symptoms experienced by the Veteran. Although the Veteran described an inability to lift heavy objects, kneel, bend, squat, walk up and down stairs, or stand or walk for more than a certain number of minutes, these were all characterizations of his inability to engage in various activities due to his pain and other symptoms contemplated by the criteria rather than independent symptoms. The Board therefore finds that the criteria contemplate the symptoms, and consideration of whether the Veteran's disability picture exhibits other related factors such as those provided by the regulations as governing norms is not required. Referral for consideration of an extraschedular rating for the Veteran's right knee disability is thus not warranted. 38 C.F.R. § 3.321(b)(1).

As the Board has not considered whether these disabilities caused marked interference with employment in the extraschedular context, there is no inconsistency in also finding below that a remand is warranted for referral to the Director of Compensation of the issue of entitlement to a TDIU prior to June 1, 2010 . See Brambley v. Principi, 17 Vet. App. 20, 24 (2003). There is also no occasion to consider the collective impact of these disabilities on employability. Cf. Johnson v. McDonald, 762 F.3d 1362, 1365-66 (Fed. Cir. 2014) (indicating that referral for extraschedular consideration based on the collective impact of multiple disabilities is warranted where the criteria do not contemplate the symptoms).

Conclusion

For the foregoing reasons, a rating higher than 10 percent under DC 5259 or any other potentially applicable diagnostic code is not warranted for the Veteran's right knee disability prior to April 7, 2009; a separate compensable rating of 10 percent, but no higher, is warranted for lateral instability prior to April 7, 2009; and a rating of 60 percent, but no higher, is warranted for the Veteran's right knee disability from June 1, 2010. In reaching the above determinations, reasonable doubt has been resolved in favor of the Veteran when the evidence has been approximately evenly balanced, and the preponderance of the evidence is against any higher rating. 38 U.S.C.A. § 5107(b); 38 C.F.R. § 4.3.


ORDER

Entitlement to an increased rating for post-operative excision, loose body right knee, torn cartilage, rated 10 percent prior to April 7, 2009, is denied.

Entitlement to a separate rating of 10 percent, but no higher, for right knee lateral instability prior to April 7, 2009, is granted, subject to controlling regulations governing the payment of monetary awards.

Entitlement to a rating of 60 percent, but no higher, for right total knee replacement associated with post-operative excision, loose body right knee, torn cartilage, from June 1, 2010, is granted, subject to controlling regulations governing the payment of monetary awards. 


REMAND

On the April 2008 VA examination, the Veteran indicated that he would not be able to perform his occupation as an auto mechanic due to his knee disability. As the Veteran was seeking the highest rating possible for his right knee disability and there was evidence of unemployability due to the right knee disability, the issue of entitlement to TDIU has been raised as part and parcel of the claim for an increased rating for right knee disability that was filed in October 2008. See Rice v. Shinseki, 22 Vet. App. 447, 453 (2009). The appeal period for any increased rating claim, including TDIU, begins one year prior to the date of claim. See 38 U.S.C.A. § 5110(b)(3) (West 2014). Consideration of this matter should therefore include whether the Veteran was entitled to a TDIU from October 2007, even though the Veteran was not entitled to a TDIU based on his schedular rating at that time. See 38 C.F.R. § 4.16(a),(b) (2014) (indicating that TDIU is warranted where the Veteran meets certain schedular requirements but that is VA's policy that a TDIU is warranted whenever a Veteran is unemployable due to service connected disability).

Because the issue of entitlement to a TDIU is a part and parcel of an increased rating claim that meets the Rice criteria, and is therefore not a separate claim, the issue of entitlement to a TDIU is properly before the Board for adjudication as part of the appeal of the denial of the rating claim. See Young (William) v. Shinseki, 25 Vet. App. 201, 204 (2012) ("when a claim (or a part or theory in support of a claim) erroneously is referred instead of remanded, a claimant loses his statutory right to expedited consideration absent Court correction"). The above evidence reflects that prior to July 1, 2010, the symptoms of the Veteran's right knee disability caused a degree of impairment that impacted his employment as an auto mechanic. Consideration of entitlement to a TDIU under 38 C.F.R. § 4.16(b) is therefore warranted. As the Board cannot consider entitlement to TDIU under 38 C.F.R. § 4.16(b) in the first instance, this issue must be remanded to the AOJ for referral to VA's Director of Compensation. Bowling v. Principi, 15 Vet. App. 1, 10 (2001).

Accordingly, the issue of entitlement to a TDIU prior to July 1, 2010 is REMANDED for the following action:

1. Refer to the Director of Compensation the issue of entitlement to a TDIU prior to July 1, 2010 pursuant to 38 C.F.R. § 4.16(b).

2. If any benefit sought on appeal remains denied, furnish the Veteran and his representative a SSOC and return the case to the Board.

The Veteran has the right to submit additional evidence and argument on the matter the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This matter must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other

appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).




______________________________________________
JAMES D. RIDGWAY
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs