Citation Nr: 1719086 
Decision Date: 05/31/17 Archive Date: 06/06/17

DOCKET NO. 15-10 831 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Huntington, West Virginia


THE ISSUES

1. Entitlement to an initial rating in excess of 30 percent for service-connected oral facial injury with loss of teeth, status-post root canal.

2. Entitlement to a rating in excess of 10 percent for service-connected degenerative disc disease (DDD) of the thoracolumbar spine.

3. Entitlement to an initial rating in excess of 10 percent for service-connected right eye disability.

4. Entitlement to an initial rating in excess of 10 percent for tinnitus.

5. Entitlement to an initial compensable rating for service-connected bilateral hearing loss.

6. Entitlement to service connection for residuals of a left ring finger injury.

7. Entitlement to service connection for chronic chest pain.

8. Entitlement to service connection for residuals of intestinal polyps, status-post removal.

9. Entitlement to service connection for seborrheic and actinic keratosis, to include of the back and upper extremities.

10. Entitlement to service connection for bilateral elbow disability.

11. Entitlement to service connection for bilateral ankle disability.


REPRESENTATION

Veteran represented by: The American Legion


ATTORNEY FOR THE BOARD

K. K. Buckley, Counsel


INTRODUCTION

The Veteran served on active duty from January 1991 to May 1991 and November 2000 to September 2011.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a September 2012 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Huntington, West Virginia.

The Veteran was scheduled to appear in Washington D.C. for a personal hearing before a Veterans Law Judge; however, he withdrew his request for a hearing pursuant to 38 C.F.R. § 20.704(e).

The Veteran initially claimed entitlement to service connection for residuals of mole removal from the back. However, his service treatment records and lay statements show that he is asserting service connection for seborrheic and actinic keratosis of multiple skin surfaces including the back, forearms, and hands. Accordingly, the Board has restated the issue above pursuant to the holding of the United States Court of Appeals for Veterans Claims (Court) in Clemons v. Shinseki, 23 Vet. App. 1 (2009), which found that when a claimant makes a claim, (s)he is seeking service connection for symptoms regardless of how those symptoms are diagnosed or labeled. The Board observes that the Veteran is already service-connected for facial herpes with xerosis cutis, seborrheic and actinic keratosis, evaluated as 60 percent disabling. See the rating decision dated March 2015. As such, the Board has limited the issue to seborrheic and actinic keratosis of multiple skin surfaces other than the face.

The issues of entitlement to increased ratings for oral facial injury, DDD of the lumbosacral spine, right eye disability, and bilateral hearing loss, as well as entitlement to service connection for chronic chest pain, bilateral elbow disability, and bilateral ankle disability are addressed in the REMAND portion of the decision below and are REMANDED to the Agency of Original Jurisdiction (AOJ). The Veteran will be notified if further action on his part is denied.


FINDINGS OF FACT

1. The Veteran's service-connected tinnitus has been assigned a 10 percent disability rating, which is the maximum rating authorized under the applicable schedular criteria.

2. The evidence is at least evenly balanced as to whether the currently diagnosed residuals of left ring finger injury are as likely as not related to the Veteran's active military service.

3. The evidence is at least evenly balanced as to whether the currently diagnosed seborrheic and actinic keratosis of the back and upper extremities is as likely as not related to the Veteran's active military service.

4. The evidence is at least evenly balanced as to whether the currently diagnosed residuals of intestinal polyps, status-post removal, are as likely as not related to the Veteran's active military service.


CONCLUSIONS OF LAW

1. The criteria for an initial rating in excess of 10 percent for tinnitus have not been met. 38 U.S.C.A. §§ 1155, 5107 (West 2015); 38 C.F.R. §§ 3.321, 4.87, Diagnostic Code 6260 (2016).

2. With reasonable doubt resolved in favor of the Veteran, residuals of left ring finger injury was incurred in his active military service. 38 U.S.C.A. §§ 1110, 1131, 5107 (West 2014); 38 C.F.R. §§ 3.303 (2016).

3. With reasonable doubt resolved in favor of the Veteran, seborrheic and actinic keratosis, including of the back and upper extremities, was incurred in his active military service. 38 U.S.C.A. §§ 1110, 1131, 5107 (West 2014); 38 C.F.R. §§ 3.303 (2016).

4. With reasonable doubt resolved in favor of the Veteran, residuals of intestinal polyps status-post removal was incurred in his active military service. 38 U.S.C.A. §§ 1110, 1131, 5107 (West 2014); 38 C.F.R. §§ 3.303 (2016).







REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Duties to Notify and Assist

As a preliminary matter, the Board finds that VA has satisfied its duties under the Veteran's Claims Assistance Act of 2000 (VCAA) to notify and assist. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.326(a) (2016). The Veteran and his representative have not argued otherwise. Scott v. McDonald, 789 F.3d 1375 (Fed. Cir. 2015).

As to the claims of entitlement to service connection for residuals of left ring finger injury, seborrheic and actinic keratosis, and residuals of removal of intestinal polyps, the Board has considered the legislation regarding VA's duty to notify and to assist claimants and finds that, given the favorable action taken herein, no further discussion of these VCAA requirements is required. Bernard v. Brown, 4 Vet. App. 384 (1993); VAOPGCPREC 16-92, 57 Fed. Reg. 49, 747 (1992).

With respect to the claim of entitlement to a higher initial rating for tinnitus, a pre-decisional notice letter dated in November 2011 complied with VA's duty to notify the Veteran. When service connection has been granted and the initial rating and effective date has been assigned, the claim of service connection has been more than substantiated. Once a claim for service connection has been substantiated, the filing of a notice of disagreement with the rating of the disability does not trigger additional § 5103(a) notice. See Dingess v. Nicholson, 19 Vet. App. 473,490-491 (2006); Dunlap v. Nicholson, 21 Vet. App. 112 (2007).

With respect to VA's duty to assist, the Veteran's service treatment records (STRs), as well as private and VA treatment records have been obtained and associated with the claims file. The Veteran was afforded a VA examination in January 2012 as to his tinnitus. Barr v. Nicholson, 21 Vet. App. 303, 312 (2007). The Board finds that the VA examination report is sufficient, as the examiner provided explanations for the opinions stated as well as the medical information necessary to apply the appropriate rating criteria.

Accordingly, the Board finds that VA's duty to assist with respect to obtaining a VA examination with respect to the pending claim has been met. 38 C.F.R. § 3.159(c)(4).

II. Schedular analysis - tinnitus

Under 38 C.F.R. § 4.87, Diagnostic Code 6260, recurrent tinnitus warrants a maximum 10 percent rating. See also Smith v. Nicholson, 451 F.3d 1344 (Fed. Cir. 2006) (holding that 38 C.F.R. § 4.25(b) and Diagnostic Code 6260 limits a veteran to a single disability rating for tinnitus, regardless whether the tinnitus is unilateral or bilateral).

The Veteran's service-connected tinnitus has been assigned the maximum schedular rating available. 38 C.F.R. §4.87, Diagnostic Code 6260. There is no legal basis upon which to award a higher schedular disability rating, and the Veteran's representative has submitted no evidence or argument with respect to this issue. 

The Veteran has not raised any other issues with respect to the higher initial rating claim, nor have any other assertions been reasonably raised by the record. See Doucette v. Shulkin, No. 15-2818, 2017 U.S. App. Vet. Claims LEXIS 319, *8-9 (Vet. App. March 17, 2017) (confirming that the Board is not required to address issues unless they are specifically raised by the claimant or reasonably raised by the evidence of record).

II. Service connection

In order to prevail on the issue of service connection for any particular disability, there must be evidence of a current disability; evidence of in-service occurrence or aggravation of a disease or injury; and medical evidence, or in certain circumstances, lay evidence, of a nexus between an in-service injury or disease and the current disability. See Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004).

Service connection may be granted for disability resulting from either disease or injury incurred or aggravated during active duty for training (ACDUTRA). With respect to time periods of inactive duty for training (INACDUTRA), service connection may only be granted for injury (and not disease) so incurred or aggravated. 38 U.S.C.A. §§ 101 (24), 106, 1110, 1131 (West 2014). Only service department records can establish if and when a person was serving on active duty, ACDUTRA, or INACDUTRA. Cahall v. Brown, 7 Vet. App. 232, 237 (1994).

In rendering a decision on appeal, the Board must analyze the credibility and probative value of the evidence, account for the evidence which it finds to be persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the claimant. Gabrielson v. Brown, 7 Vet. App. 36, 39-40 (1994); Gilbert v. Derwinski, 1 Vet. App. 49, 57 (1990). When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the benefit of the doubt shall be given to the claimant. 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102. The question is whether the evidence supports the claim or is in relative equipoise, with the claimant prevailing in either event, or whether a fair preponderance of the evidence is against the claim, in which event the claim must be denied. Gilbert, 1 Vet. App. at 54.

In this matter, the Veteran contends that he suffers from residuals of a left ring finger injury, seborrheic and actinic keratosis of the back and upper extremities, and residuals of intestinal polyps, which were incurred during his active military service. For the reasons set forth below, the Board concludes that service connection is warranted.

As indicated above, the Veteran served on active duty from January 1991 to May 1991 and November 2000 to September 2011. Service treatment records (STRs) dated in October 2000 show that the Veteran slammed his left ring finger in a car door, while on INACDUTRA. As indicated above, with respect to time periods of INACDUTRA, service connection may only be granted for disability resulting from injury sustained therein. 38 U.S.C.A. §§ 101 (24), 106, 1110, 1131 (West 2014). The record shows that following his INACDUTRA injury, the Veteran was found to have a left fourth digit injury with hypertrophic scar without adhesion. See January 2001 record of follow-up treatment. 

In a July 2003 post-deployment assessment, following his return from Bahrain, the Veteran complained of diarrhea. 

STRs dated in September 2004 noted a history of a mole on the Veteran's back with pruritus. Specifically, a 1.0cm. x 1.0cm. round flesh-colored thrombosed plaque with some scale on the right upper back, as well as a hyperpigmented 1.5cm. x. 1.5cm. plaque on the left upper back. A diagnosis of seborrheic keratosis due to clinical presentation was indicated. See the STR dated September 2004. The moles were subsequently removed. STRs dated in June 2008 and June 2009 noted the Veteran's continuing treatment for skin lesions, which were variously diagnosed as benign skin neoplasm and lentigo, as well as seborrheic and actinic keratosis. See also the STRs dated September 2010 and June 2011.

Less than one month after the Veteran's September 2011 active duty discharge, a colonoscopy was conducted in October 2011, which diagnosed internal hemorrhoids and polyps. The polyps were subsequently removed. See the treatment records dated in October 2011. The Veteran reports that he suffers from fecal incontinence following the removal of the polyps. To this end, the Veteran is competent to report symptoms such as fecal incontinence. See Jandreau v. Nicholson, 492 F.3d 1372, 1377 (2007) (lay testimony is competent to establish the presence of observable symptomatology as well as other matters).

In a January 2012 VA examination report, the examiner noted the Veteran's history of a crush injury to the ring finger of the left hand with "no significant residuals." The Veteran reported that, following the October 2000 injury, the nail edge of his left ring finger became infected and had to be drained. He denies current pain, but endorses a presence of abnormal nail grown in the nail bed, which he removes as it occurs. There is currently no functional impairment of the left ring finger. An x-ray of left 4th finger was normal.

A separate dermatological VA examination was conducted in January 2012. The examiner noted that the Veteran had lesions removed from his right cheek, back, and right forearm several times during active duty. These lesions were noted to be benign seborrheic and actinic keratosis. Upon physical examination, the examiner noted mild erythema with no active scaling, typical of actinic keratosis. Scattered discolored macular patches were identified on the back, forearm, and chest.

The Veteran was also afforded a VA examination in January 2012, as to the claimed intestinal polyps. The examiner explained that the Veteran had benign colon polyps removed in 2011. The examiner noted the Veteran's report that he began having fecal incontinence in 2003 after returning from Bahrain, which continued after his intestinal polyp removal.

In his October 2012 notice of disagreement (NOD), the Veteran reported that his left ring finger continues to have a deformity; specifically, an additional fingernail grows over his 'normal' fingernail. He stated that this abnormal growth frequently tears when he performs routine activities of daily living. In support of this contention, the Veteran submitted photographs of his abnormal fingernail growth. The Veteran also reported that he continues to experience fecal incontinence following the removal of intestinal polyps. He also stated that his seborrheic and actinic keratosis manifested in recurrent moles, which become odd in color and require removal.

VA treatment records dated in August 2012 indicated that the Veteran has a history of precancerous lesions removed from his back. A diagnosis of actinic keratosis was shown.

In sum, the Board finds that the record supports the award of service connection for residuals of a left ring finger injury, intestinal polyps status-post removal, and seborrheic and actinic keratosis including of the back and upper extremities. Given the Veteran's STRs, post-service treatment records, and his credible lay statements, the Board finds that the evidence is at least evenly balanced as to whether these disabilities had their inception during the Veteran's military service. As the reasonable doubt created by this relative equipoise in the evidence must be resolved in favor of the Veteran, entitlement to service connection for residuals of a left ring finger injury, intestinal polyps status-post removal, and seborrheic and actinic keratosis of back and upper extremities is warranted. 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102.


ORDER

Entitlement to an initial rating in excess of 10 percent for service-connected tinnitus is denied.

Entitlement to service connection for residuals of left ring finger injury is granted.

Entitlement to service connection for seborrheic and actinic keratosis, including of the back and upper extremities, is granted.

Entitlement to service connection for residuals of intestinal polyps status-post removal is granted.


REMAND

For the reasons set forth below, the Board finds that the remaining claims on appeal must be remanded for additional evidentiary development.

The Board initially notes that the most recent VA treatment records associated claims file are dated in August 2012. The Veteran has indicated that he continues to receive VA treatment. See, e.g., the Veteran's statements dated April 2017 and December 2013. As such, to ensure that all due process requirements are met, and that the record is complete, the AOJ should undertake appropriate action to obtain all pertinent, outstanding records.

With regard to the claim of entitlement to a higher initial rating for service-connected oral facial injury with loss of teeth, the Veteran was most recently afforded a VA examination in January 2012. The VA examiner noted that the Veteran suffered from temporomandibular joint dysfunction (TMJ); however, the examiner failed to complete an additional disability benefits questionnaire (DBQ) in order to render specific findings including limitation of temporomandibular articulation, as would be necessary to determine if an additional rating is warranted under Diagnostic Code 9905. The January 2012 VA examiner also reported that the Veteran was diagnosed with osteomyelitis or osteoradionecrosis of the mandible; however, the examiner failed to address whether the Veteran suffered from any residuals of osteomyelitis/osteoradionecrosis by completing the requisite DBQ. As the medical evidence is insufficient to properly evaluate the service-connected oral facial injury with loss of teeth, the Board finds that an updated VA examination is warranted to address the existence and severity of his service-connected oral facial injury with loss of teeth.

The Board observes that a veteran can be rated separately for different manifestations of the same disability, where "none of the symptomatology for any one of [the] conditions is duplicative of or overlapping with the symptomatology of the other two conditions," and that such combined ratings do not constitute pyramiding prohibited by 38 C.F.R. 4.14. Esteban v. Brown, 6 Vet. App. 259 (1994). Although VA must avoid evaluating the same disability under various diagnoses, "[i]f the appellant's symptoms are 'distinct and separate,' then the appellant is entitled to separate disability ratings for the various conditions." Murray v. Shinseki, 24 Vet. App. 420, 423 (2011) (quoting Esteban, 6 Vet. App. at 262).

Thus, once the necessary examination is obtained, the AOJ should consider whether all of the Veteran's service-connected symptomatology and pathology is appropriately rated, to include whether separate disability ratings are warranted for the service-connected oral facial injury with loss of teeth as the diagnosed TMJ.

With respect to the claim of entitlement to an increased rating for DDD of the thoracolumbar spine, the January 2012 VA examiner determined that the Veteran did not experience any symptoms of radiculopathy. However, the Veteran's treatment records document his repeated assertions of back pain radiating down his lower extremities. See, e.g., the STRs dated January 2009 and the VA treatment records dated August 2012 and April 2012. Moreover, in a separate January 2012 traumatic brain injury (TBI) VA examination, the examiner stated that the Veteran has "sensory problems in legs and feet due to back condition."

Additionally, the Court recently issued a decision in Correia v. McDonald, 28 Vet. App. 158 (2016), in which the Court held that the final sentence of 38 C.F.R. § 4.59 requires that VA musculoskeletal examinations include joint testing for pain on both active and passive motion, and in weight-bearing and nonweight-bearing (and, if possible, with range of motion measurements of the opposite undamaged joint). Critically, this type of joint testing was not accomplished during the Veteran's most recent VA examination in January 2012; accordingly, further VA examination is warranted. In the updated VA examination, the examiner must also consider whether the Veteran has objective neurological abnormalities, to include radiculopathy, associated with his thoracolumbar spine disability. See 38 C.F.R. § 4.71a, Diagnostic Codes 5235-5243, Note (1) (2016).

With regard to the service-connected right eye disability and bilateral hearing loss, the Veteran was last afforded VA examinations in January 2012. As the matters must be remanded in order to obtain updated VA treatment records, the Board finds that, upon remand, the Veteran should be afforded new VA examinations to obtain contemporaneous, pertinent information to assess the current nature and severity of his right eye and bilateral hearing loss disabilities. See Snuffer v. Gober, 10 Vet. App. 400 (1997); Caffrey v. Brown, 6 Vet. App. 377 (1994); VAOPGCPREC 11-95 (1995).

Accordingly, the case is REMANDED for the following action:

1. Obtain all outstanding records of VA evaluation and/or treatment of the Veteran since August 2012. Follow the procedures set forth in 38 C.F.R. § 3.159(c) with respect to requesting records from Federal facilities. All records/responses received should be associated with the claims file.

2. Arrange for the Veteran to undergo VA examination, by an appropriate medical professional, for evaluation of his service-connected oral facial injury with loss of teeth, status-post root canal. Access to the Veteran's electronic VA claims file must be made available to the examiner for review in connection with the examination. 

The examiner should identify, and comment on the nature, frequency and/or severity (as appropriate), of all oral facial injury symptoms, to include TMJ and/or osteomyelitis, found to be present.

All examination findings/testing results, along with complete, clearly-stated rationale for the conclusions reached, must be provided.

3. The Veteran should be afforded a VA examination in order to determine the extent of his service-connected DDD of the thoracolumbar spine. Access to the Veteran's electronic VA claims file must be made available to the examiner for review in connection with the examination. 

The examination should be conducted in accordance with the current disability benefits questionnaire, to include testing for pain on both active and passive motion, and in weight bearing and nonweight-bearing, consistent with 38 C.F.R. § 4.59 as interpreted in Correia v. McDonald, 28 Vet. App. 158 (2016).

In rendering his/her findings, the examiner should identify any evidence of neurological manifestations due to the service-connected DDD of the thoracolumbar spine to include any neurological pathology of the right and left lower extremities. The examiner must identify the specific nerves involved or seemingly involved and describe the degree of impairment as mild, moderate, moderately severe, or severe incomplete paralysis, or complete paralysis. In addition, the examiner should either diagnose or rule out radiculopathy of the right and left lower extremities.

In addition, the examiner should address the impact of the thoracolumbar disability upon the Veteran's industrial activities including his ability to obtain and maintain substantially gainful employment.

All examination findings/testing results, along with complete, clearly-stated rationale for the conclusions reached, must be provided.

4. Arrange for the Veteran to undergo VA examination, by an appropriate medical professional, for evaluation of his service-connected right eye disability. T Access to the Veteran's electronic VA claims file must be made available to the examiner for review in connection with the examination. 

The examiner should identify, and comment on the nature, frequency and/or severity (as appropriate), of the right eye disability.

All examination findings/testing results, along with complete, clearly-stated rationale for the conclusions reached, must be provided.

5. Arrange for the Veteran to undergo a VA audiological examination to determine the extent and severity of his bilateral hearing loss. Access to the Veteran's electronic VA claims file must be made available to the examiner for review in connection with the examination. 

In addition to providing specific audiometric findings to include speech discriminations scores, the examiner is specifically requested to fully describe the functional effects caused by the Veteran's bilateral hearing loss.

All examination findings/testing results, along with complete, clearly-stated rationale for the conclusions reached, must be provided.

6. After conducting any additional development deemed necessary, the AOJ should readjudicate the claims, considering all the evidence of record. In reaching its determination regarding the Veteran's service-connected oral facial injury with loss of teeth, the AOJ should consider whether all manifestations are appropriately considered and rated, to include whether separate compensable ratings are warranted. See Esteban v. Brown, 6 Vet. App. 259, 261 (1994). If the benefits sought are not granted, the Veteran should be furnished a Supplemental Statement of the Case and be afforded a reasonable opportunity to respond before the record is returned to the Board for further review.

The Veteran has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

These claims must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board or by the Court for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).




______________________________________________
K. CONNER
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs