# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 09-0158

DANIEL J. MURRAY, APPELLANT,

v.

ERIC K. SHINSEKI,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued April 28, 2011                    Decided June 15, 2011)

*Kenneth M. Carpenter,* of Topeka, Kansas, for the appellant.

*Michael A. Carr,* with whom *Will A. Gunn*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; and *Leslie C. Rogall*, Deputy Assistant General Counsel, all of Washington, D.C., were on the brief for the appellee.

Before HAGEL, MOORMAN, and DAVIS, *Judges*.

HAGEL, *Judge*: Daniel J. Murray appeals through counsel a September 18, 2008, Board of Veterans' Appeals (Board) decision that denied his claim for an increased disability rating for residuals of a left knee injury with arthritis.[1]  Record (R.) at 3-17.  This case is decided by a panel because it presents a novel question of law: Whether a disability evaluation that has been continuously in effect for more than 20 years is considered to have been reduced when VA assigns a new Diagnostic Code to the condition?  Because the Board's decision denied Mr. Murray the right to retain a disability rating that had been continuously in effect for more than 20 years, the Court will reverse the September 18, 2008, Board decision and remand the matter with instructions to reinstate

_____

[1]The Board also remanded Mr. Murray's claims for increased disability ratings for residuals of a right knee injury and right knee synovitis, including entitlement to a total disability rating based on individual unemployability, which are not before the Court at this time.  *See* 38 U.S.C. § 7266 (stating that the Court reviews only final decisions of the Board); *see also Howard v. Gober*, 220 F.3d 1341, 1344 (Fed. Cir. 2000) (stating that a Board remand does not constitute a final decision that may be appealed (citing 38 C.F.R. § 20.1100(b) (1999))).

the improperly revoked disability rating, to pay Mr. Murray disability compensation unlawfully withheld, and to further readjudicate his claim consistent with this opinion.

## I.  FACTS

Mr. Murray served on active duty in the U.S. Army from March 1979 to July 1979 and served on inactive duty for training with the National Guard in June 1982.  In December 1983, a VA regional office awarded Mr. Murray VA benefits for residuals of a left knee injury and assigned a 10% disability rating under 38 C.F.R. § 4.71a, Diagnostic Code 5257, for recurrent subluxation[2] or lateral instability of the knee, effective October 31, 1983.

In November 2001, Mr. Murray filed a claim for an increased disability rating for residuals of a left knee injury. When that claim was denied, he appealed.  In January 2003, the regional office issued another decision denying his claim.  In that decision, the regional office found that there was "no laxity" of Mr. Murray's left knee at that time, but nevertheless continued his 10% disability rating for residuals of a left knee injury under Diagnostic Code 5257.  R. at 327.  Mr. Murray appealed that decision.

It is undisputed that on October 31, 2003, while Mr. Murray's appeal was pending, his 10% disability rating for residuals of a left knee injury under Diagnostic Code 5257 became protected under 38 C.F.R. § 3.951(b) because it had been in effect for 20 years.[3]

In September 2005, the Board remanded Mr. Murray's claim for an increased disability rating for residuals of a left knee injury because the Board found that it was inextricably intertwined with a claim for benefits for left knee arthritis that Mr. Murray raised for the first time in an April 2005 hearing and that had not yet been adjudicated by the regional office.

---

[2]Subluxation is "an incomplete or partial dislocation." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1817 (31st ed. 2007).

[3]Section 3.951(b), entitled "Preservation of disability ratings," provides in pertinent part:

> A disability which has been continuously rated at or above any evaluation of disability for 20 or more years for compensation purposes . . .  will not be reduced to less than such evaluation except upon a showing that such rating was based on fraud. . . .  The 20-year period will be computed from the effective date of the evaluation to the effective date of reduction of evaluation.

38 C.F.R. 3.951(b) (2010); see also 38 U.S.C. § 110.

2

Pursuant to this remand order, Mr. Murray was provided with a VA medical examination in February 2008. The examiner noted that Mr. Murray did not have any instability of the left knee nor did he suffer from episodes of left knee dislocation or subluxation, but that he had pain and weakness in the left knee. The examiner then opined that Mr. Murray's left knee arthritis was "causally related" to his service-connected knee disabilities. R. at 73.

Based on this examination, the regional office in March 2008 partially granted Mr. Murray's claim for benefits for arthritis of the left knee by labeling his arthritis a residual of his in-service left knee injury. As a result, the regional office reclassified his disability as residuals of a left knee injury *with arthritis* and assigned a 10% disability rating under 38 C.F.R. § 4.71a, Diagnostic Codes 5260 (limitation of leg flexion) and 5261 (limitation of leg extension), replacing the previously assigned Diagnostic Code 5257 (recurrent subluxation or lateral instability of the knee), effective March 1, 1993.[4] The regional office explained that it did not assign separate disability ratings for his arthritis and other residuals of a left knee injury because doing so would "violat[e] the principles of pyramiding." R. at 39; *see* 38 C.F.R. § 4.14 (2010) ("The evaluation of the same disability under various diagnoses is to be avoided.").

In September 2008, the Board issued the decision currently on appeal, which denied Mr. Murray's claim for an increased disability rating for residuals of a left knee injury with arthritis. Specifically, the Board determined that, even though Mr. Murray had a 10% disability rating for his left knee conditions under the newly assigned Diagnostic Codes 5260 and 5261, he did not, in actuality, demonstrate even the minimum symptoms that would yield a compensable disability rating under either Diagnostic Code.[5] The Board, therefore, mysteriously concluded that Mr. Murray's "current 10[% disability] rating adequately compensates him for the extent of his pain, including insofar as it affects his range of motion." R. at 13-14 (citing 38 C.F.R. § 4.71a, Diagnostic Codes 5003 (degenerative arthritis) and 5010 (arthritis due to trauma) (2007)). Moreover, the Board

---

[4] Neither the record nor the Board explains this change in effective date.

[5] Specifically, the Board noted that Mr. Murray had "at most, slight limitation of flexion in his left knee, insufficient to warrant even the lowest possible compensable disability evaluation under Diagnostic Code 5260," and "full extension" such that "a separate compensable rating is not warranted under Diagnostic Code 5261." R. at 13. The Board also found that there was "no objective clinical indication . . . that his left knee pain causes additional functional impairment over and beyond that objectively shown, even when his symptoms are most problematic." R. at 14.

3

acknowledged that separate disability ratings may be assigned for arthritis and instability of the knee under Diagnostic Codes 5003 and 5257, respectively, *see* VA Gen. Coun. Prec. 23-97 (July 1, 1997), but determined that separate disability ratings for these conditions were not warranted in this case because "the objective evidence does not show instability or subluxation of the left knee, according to the January 2003, December 2005, and February 2008 VA examination reports," and "VA examinations were negative for objective evidence of instability or locking, as his left knee ligaments were stable." R. at 14 (citing 38 C.F.R. § 3.951(b)). Based on the foregoing, the Board concluded that Mr. Murray's current 10% disability rating for residuals of a left knee injury with arthritis, evaluated under Diagnostic Codes 5260 and 5261, was "most appropriate" "[c]onsidering the rating criteria in relation to the relevant evidence of record." R. at 13.

## II. THE PARTIES' ARGUMENTS

On appeal, Mr. Murray argues that the Board failed to properly apply 38 C.F.R. § 4.25(b) when it determined that he was not entitled to separate disability ratings for his later diagnosed arthritis of the left knee and for his other service-connected residuals of a left knee injury. Mr. Murray also contends that his 10% disability rating for the residuals of a left knee injury, effective October 31, 1983, which did not include arthritis of the left knee, was protected from reduction under 38 C.F.R. § 3.951(b), and that VA impermissibly disturbed this protected disability rating when it began evaluating his left knee conditions cumulatively under Diagnostic Codes 5260 and 5261.

In response, the Secretary argues that the Board's determination that Mr. Murray was not entitled to separate disability ratings for arthritis of the left knee and for the other residuals of a left knee injury was not clearly erroneous because evaluating those disabilities separately would constitute pyramiding in violation of § 4.14. The Secretary also contends that "shifting [diagnostic codes] is not the equivalent of reducing [Mr. Murray's] disability rating for his left knee condition." Secretary's Brief (Br.) at 8-9.

## III. ANALYSIS

"Except as otherwise provided in [the rating] schedule, the disabilities arising from a single disease entity, e.g., arthritis, multiple sclerosis, cerebrovascular accident, etc., are to be rated

4

separately as are all other disabling conditions, if any." 38 C.F.R. § 4.25(b) (2010). In *Estaban v. Brown*, the Court explained that, when determining whether to assign separate disability ratings under § 4.25(b), "[t]he critical element is that *none* of the symptomatology for any . . . conditions is *duplicative* of or *overlapping* with the symptomatology of the other . . . conditions." 6 Vet.App. 259, 262 (1994) (emphasis in original). If the appellant's symptoms are "distinct and separate," then the appellant is entitled to separate disability ratings for the various conditions. *Id*. In addition, two VA General Counsel Precedent Opinions, which are binding on VA, indicate that separate evaluations are allowed for separate disabilities arising from the same knee injury. *See* VA Gen. Coun. Prec. 9-2004 (Sept. 17, 2004) (authorizing separate evaluations for limitation of leg flexion and limitation of leg extension); VA Gen. Coun. Prec. 23-97 (July 1, 1997) (authorizing separate evaluations for arthritis and subluxation or instability of the knee under Diagnostic Codes 5003 and 5257); *see also Hornick v. Shinseki*, 24 Vet.App. 50, 52 (2010) ("The Board is 'bound in its decisions by the . . . precedent opinions of the chief legal officer of the Department.'" (quoting 38 U.S.C. § 7104(c))).

Mr. Murray contends that his arthritis is a separate disability from his other left knee conditions, which all arose from his in-service left knee injury, and that the Board committed clear error when it failed to rate these conditions separately.[6] *See* Appellant's Br. at 8 ("Arthritis is specifically identified [in § 4.25(b)] as a disability arising from a single disease entity, which is to be rated separately and then combined with all other service connected disabilities."). Although the Court does not necessarily accept Mr. Murray's characterization of his knee injury as a "single disease entity," the Court agrees that a review of the record reveals that the Board's decision is clearly erroneous.

Specifically, it is entirely unclear from the Board decision whether and to what extent the Board considered § 3.951(b), which provides for the protection of disability ratings that are in effect for 20 or more years, *see supra* at __, slip op. at 2 n.3. Both parties agree this regulation applies in this case. The Board, however, only referenced this regulation once in its 15-page decision:

---

[6]The Court does not have jurisdiction to address Mr. Murray's argument that his arthritis in the left knee and right knee are separate disabilities arising from a single disease entity and should have been rated separately because his claim for an increased disability rating for right knee synovitis, with arthritis, was remanded by the Board. *See* 38 U.S.C. 7266(a); *Howard*, 220 F.3d at 1344; 38 C.F.R. § 20.1100(b).

5

> In this case, however, the objective evidence does not show instability or subluxation of the left knee, according to the January 2003, December 2005, and February 2008 VA examination reports. In this regard, the Board points out that [Mr. Murray]'s VA examinations were negative for objective evidence of instability or locking, as his left knee ligaments were stable. *See 38 C.F.R. § 3.951(b).*

R. at 14 (emphasis added). Aside from this citation, the Board did not discuss § 3.951(b) at all or explain how it impacted the Board's analysis of Mr. Murray's claim.

After October 31, 2003, the 20-year anniversary of the effective date of Mr. Murray's initial 10% disability rating for residuals of a left knee injury under Diagnostic Code 5257, VA was required to discuss § 3.951(b) in any subsequent adjudication involving his left knee disability, regardless of the extent of protection afforded by that regulation.[7] *See* 38 U.S.C. § 7104(a) (requiring that the Board consider and discuss all "applicable provisions of law and regulation"). Without the benefit of the Board's explanation of how it applied § 3.951(b) to Mr. Murray's claim, the Court is left to speculate as to the Board's reasoning for its decision. *See Gilbert v. Derwinski*, 1 Vet.App. 49, 57 (1990) (holding that the Board's statement of reasons or bases for its decision must be adequate to enable a claimant to understand the precise basis for the Board's decision and to facilitate review in this Court); *see also* 38 U.S.C. § 7104(d)(1) (requiring the Board to provide a written statement of the reasons or bases for its "findings and conclusions[] on all material issues of fact and law presented on the record"); *Caluza v. Brown*, 7 Vet.App. 498, 506 (1995), *aff'd per curiam*, 78 F.3d 604 (Fed. Cir. 1996) (table).

Such a deficiency is, at a minimum, indicative of a Board decision containing an inadequate statement of reasons or bases. *See Gilbert*, 1 Vet.App. at 57. However, the Court concludes that reversal, not remand, is warranted in this case because the only permissible view of the evidence is contrary to the Board's decision. *See Johnson v. Brown*, 9 Vet.App. 7, 10 (1996). Specifically, the Court notes that the Board determined that Mr. Murray was entitled to a 10% disability rating for residuals of a left knee injury *with arthritis* under Diagnostic Codes 5260 and 5261 for limitation of leg flexion and extension without explaining how this disability rating related to the protected 10%

---

[7] At this time, the Court need not decide the extent of protection afforded by § 3.951(b). The Court, however, notes that this issue may be decided by the U.S. Court of Appeals for the Federal Circuit in the case of *Read v. Shinseki*, Docket No. 2010-7100, which is currently on appeal.

disability rating for his previous evaluation under Diagnostic Code 5257 for recurrent subluxation or lateral instability, which did *not* include the effects of arthritis. The Board's determination that Mr. Murray is appropriately assigned a 10% disability rating only under Diagnostic Codes 5260 and 5261 contradicts the evidence of record, disregards the protected disability rating, and fails to adequately reflect a consideration of Mr. Murray's arthritis and its symptomatology. Based on the undisputed facts of this case, discussed below, the Court concludes that this determination by the Board effectively reduced Mr. Murray's protected disability rating to 0% and assigned a new, separate 10% disability rating. The Board's reduction of the disability rating to 0% violated the provisions of 38 C.F.R. § 3.951(b) that prohibit the reduction of a disability evaluation that has been continuous for 20 or more years.

Dissecting the Board's statements, the Court notes that the Board determined that a disability rating for symptoms associated with Mr. Murray's arthritis of his left knee, in addition to a separate disability rating for any other symptoms associated with his left knee, was not warranted in this case because "the objective evidence does not show instability or subluxation of the left knee, according to the January 2003, December 2005, and February 2008 VA examination reports," and "VA examinations were negative for objective evidence of instability or locking, as his left knee ligaments were stable." R. at 14. The Board then concluded that Mr. Murray's current 10% disability rating for residuals of a left knee injury with arthritis, evaluated under Diagnostic Codes 5260 and 5261, was "most appropriate" "[c]onsidering the rating criteria in relation to the relevant evidence of record." R. at 13. These determinations by the Board were contrary to the evidence.

First, it is undisputed that, because Mr. Murray had a 10% disability rating for his left knee condition for at least 20 years, he could not be rated below 10% for his left knee condition. The question then becomes, what were the residuals of the left knee condition for which he was awarded 10% for those 20 years? For 20 years, VA did not disturb the 10% disability rating that was based on laxity of the left knee. Specifically, in December 1983, the regional office found that Mr. Murray's left knee was "essentially within normal limits except for mild laxity." R. at 643. Laxity was the only residual of a left knee injury that Mr. Murray manifested at that time, and there was no evidence of left knee arthritis or limited range of motion. Accordingly, the regional office assigned Mr. Murray a 10% disability rating for residuals of a left knee injury under Diagnostic Code 5257

7

for recurrent subluxation or lateral instability, effective October 31, 1983. Less than 20 years after the effective date of this disability rating, VA examinations dated March 2002 and January 2003 revealed that Mr. Murray no longer suffered from left knee laxity.

At that point, the regional office could have reduced Mr. Murray's disability rating for residuals of a left knee injury or maintained his 10% disability rating and switched Diagnostic Codes to more accurately reflect his current symptoms. Instead, in a January 2003 decision, the regional office continued Mr. Murray's 10% disability rating for residuals of a left knee injury under Diagnostic Code 5257, even though Mr. Murray no longer demonstrated the residual of laxity that initially entitled him to a compensable disability rating under this Diagnostic Code. Several months later, on October 31, 2003, Mr. Murray's 10% disability rating became protected under § 3.951(b) because it had been continuously in effect for 20 years. Accordingly, the Board could not, as it did in the decision here on appeal, rely on the January 2003 examination and the more recent examination reports, which do not show instability or subluxation of the left knee, to conclude that Mr. Murray is no longer entitled to a 10% disability rating based on laxity or instability of the left knee. The Court holds that a current examination cannot act to reduce a protected disability rating where the symptoms upon which the disability rating was based are no longer present.

For the 20 years that Mr. Murray had been receiving the 10% disability rating, his disability rating for residuals of a left knee injury did not include arthritis of the left knee. As discussed below, Mr. Murray's arthritis and the symptomatology associated with it were diagnosed *after* the 20-year period. In March 2008, the regional office chronicled the development of Mr. Murray's left knee arthritis, noting that he exhibited "mild degenerative changes of the left knee" in November 2003, that he was diagnosed with "minimal arthritic changes of the left knee" in December 2005, and that a VA examiner opined in February 2008 that his left knee arthritis was related to his in-service knee injury. R. at 39. The regional office "granted service connection for left knee arthritis because the evidence showed this condition [was] related to [his] service[-]connected left knee injury." *Id*. However, without discussing any symptoms of Mr. Murray's arthritis or other left knee conditions, the regional office summarily concluded that it could not "assign separate evaluations for [his] limitation of motion and arthritis of the left knee without violating the principles of pyramiding." *Id*. Instead, the regional office "included arthritis with [Mr. Murray's] evaluation for service

8

connection for the left knee injury, which is currently evaluated at 10[%] disabling," and purportedly "continued" his 10% disability rating for residuals of a left knee injury *with arthritis* under Diagnostic Codes 5260 and 5261 for limitation of leg flexion and limitation of leg extension, respectively, retroactively effective *March 1, 1993*. R. at 39, 41.

Notably, the regional office did not explain why a change of Diagnostic Codes was warranted and did not discuss whether Mr. Murray currently had recurrent subluxation or lateral instability. Then, in September 2008, the Board denied Mr. Murray's claim for an increased disability rating for residuals of a left knee injury with arthritis because it concluded that his current 10% disability rating evaluated under Diagnostic Codes 5260 and 5261 was "most appropriate" "[c]onsidering the rating criteria in relation to the relevant evidence of record." R. at 13. By changing the Diagnostic Codes under which Mr. Murray was rated, the Board effectively found that Mr. Murray was no longer entitled to a disability rating under Diagnostic Code 5257 (instability and laxity), thus, in essence, reducing that disability rating and thus the disability compensation related to that Diagnostic Code to zero. In contrast, VA used this reassignment of Diagnostic Codes to award Mr. Murray a 10% disability rating based on the symptomatology (pain) associated with arthritis. By so doing, VA failed to accord Mr. Murray the protection afforded by 38 C.F.R. § 3.951(b).

The Board errors are multifold: First, the Board ignored the inherent inconsistency in the regional office's March 2008 decision that included arthritis in Mr. Murray's disability rating for residuals of a left knee injury effective *March 1, 1993*, more than 12 years before any diagnosis or complaint of arthritis of the left knee. Notably, the Board made no finding that Mr. Murray's arthritis began in March 1993, and the Board provided no explanation for the assignment of this effective date. In fact, with regard to Mr. Murray's left knee arthritis, the Board only stated that "his current 10[% disability] rating [under Diagnostic Codes 5260 and 5261] adequately compensates him for the extent of his pain, including insofar as it affects his range of motion." R. at 14 (citing 38 C.F.R. § 4.71a, Diagnostic Codes 5003 (degenerative arthritis) and 5010 (arthritis due to trauma)).

Second, the Board acknowledged that Mr. Murray's arthritis was caused by his left knee injury in service and that Diagnostic Codes 5003 and 5010 are applicable, but did not apply them properly. Diagnostic Code 5010 directs the adjudicator to rate arthritis due to trauma under Diagnostic Code 5003. Diagnostic Code 5003, in turn, instructs the adjudicator to "rate [the

9

condition] under the appropriate diagnostic codes for the specific joint or joints involved"–in this case, Diagnostic Codes 5260 and 5261 for limitation of leg flexion and leg extension, respectively. 38 C.F.R. § 4.71a, Diagnostic Code 5003. With respect to these Diagnostic Codes, the Board explained that Mr. Murray had, "at most, slight limitation of flexion in his left knee, insufficient to warrant even the lowest possible compensable disability evaluation under Diagnostic Code 5260" and "full extension" such that "a separate compensable rating is not warranted under Diagnostic Code 5261." R. at 13.

Nevertheless, the Court concludes that Mr. Murray was still entitled to a 10% disability rating for his left knee arthritis because Diagnostic Code 5003 provides that: "When . . . the limitation of motion of the specific joint or joints involved is noncompensable under the appropriate diagnostic codes, a rating of 10[%] is for application for each such major joint or group of minor joints affected by limitation of motion, to be combined, not added under [D]iagnostic [C]ode 5003." 38 C.F.R. § 4.71a, Diagnostic Code 5003. However, Mr. Murray was not assigned any disability rating under Diagnostic 5010 (via Diagnostic Code 5003) based on his left knee arthritis.

Third, the Board used current examination reports to retroactively change Mr. Murray's Diagnostic Code and, through this artifice, reduce the compensation upon which he relied for 20 years. The Board determined that Mr. Murray should be rated under the Diagnostic Codes for limitation of leg flexion and extension instead of the Diagnostic Code for recurrent subluxation and lateral instability beginning on March 1, 1993, because "the objective evidence does not show instability or subluxation of the left knee, according to the January 2003, December 2005, and February 2008 VA medical examination reports." R. at 14. The Court acknowledges that these VA examinations demonstrate that Mr. Murray was not experiencing recurrent subluxation or instability *at the time of the examinations*; however, they do not address the nearly 10-year period between March 1993 and January 2003 when there was no evidence indicating that Mr. Murray's laxity of the left knee had resolved. Nevertheless, the regional office retroactively changed the Diagnostic Code under which Mr. Murray's residuals of a left knee injury had been previously rated during that period to reflect that he suffered from limitation of leg flexion and extension instead of recurrent subluxation or lateral instability.

In sum, Mr. Murray's residuals of a left knee injury initially manifested in laxity of the left knee, which was evaluated under Diagnostic Code 5257 for recurrent subluxation or lateral instability effective October 31, 1983. Mr. Murray's laxity resolved in approximately January 2003 and has not returned at a compensable level since then. At that same time, Mr. Murray's residuals of a left knee injury began manifesting in limitation of motion. However, the regional office waited until March 2008, nearly 25 years after the effective date of Mr. Murray's initial disability rating, to switch the Diagnostic Codes under which his condition was rated to reflect this change in symptoms. For reasons that remain unclear and are unsupported by the medical evidence of record, the regional office selected March 1, 1993, as the effective date for this change in Diagnostic Codes. The regional office also explained that, as of December 2005, Mr. Murray had a diagnosis of left knee arthritis that would entitle him to VA benefits, which apparently also manifested itself in limitation of motion. Accordingly, the regional office concluded that Mr. Murray's symptoms of left knee arthritis were duplicative of his symptoms for his other residuals of a left knee injury, preventing the assignment of a separate disability rating. The regional office did not explain why Mr. Murray had suffered from these symptoms for 12 years before being diagnosed with left knee arthritis. The Board then perpetuated the regional office's errors by refusing to rate Mr. Murray's symptoms of left knee arthritis–i.e., pain on motion–separately. Regardless of whether the symptoms of his other left knee residuals–i.e., recurrent subluxation or lateral instability and limitation of leg flexion and extension–had since resolved, Mr. Murray is entitled to a 10% disability rating under Diagnostic Codes 5003 and 5010 for his arthritis pain.

The Court concludes that the only way the Board could have reached such a result–i.e., denying a disability rating above 10% for left knee residuals including arthritis–would be to reduce Mr. Murray's protected disability rating for residuals of a left knee injury to 0% and then to assign a new, separate 10% disability rating for left knee arthritis under Diagnostic Code 5010 (via Diagnostic Codes 5003, 5260, and 5261). This, of course, resulted in the reduction of the corresponding disability compensation. Consequently, the Court will reverse the Board's determination that Mr. Murray was entitled to a 10% disability rating for residuals of a left knee injury with arthritis under Diagnostic Codes 5260 and 5261 and remand the matter with instructions to reinstate the 10% disability rating for residuals of a left knee injury that is protected under the

11

appropriate Diagnostic Code and to assign a separate 10% disability rating for arthritis of the left knee under Diagnostic Codes 5003 and 5010, as well as remitting to Mr. Murray the resulting retroactive disability compensation. *See Johnson*, 9 Vet.App. at 10.

## IV. CONCLUSION

Upon consideration of the foregoing, the September 18, 2008, Board decision is REVERSED and the matter REMANDED for readjudication consistent with this opinion.