Citation Nr: AXXXXXXXX
Decision Date: 06/30/21 Archive Date: 06/30/21

DOCKET NO. 181107-1147
DATE: June 30, 2021

ORDER

The correction of a 1986 rating decision, which contained clear and unmistakable error (CUE), altered the legal and factual bases of an April 2002 rating decision, which also contained CUE, but the Department of Veterans Affairs (VA) Regional Office (RO) properly implemented the corrected rating decisions to the extent that it did not award a separate 60 percent rating for hypertension from August 31, 2001; entitlement to a separate 60 percent rating for hypertension from August 31, 2001, is denied. 

FINDINGS OF FACT

1. The Veteran was awarded service connection for hypertension with hypertensive heart disease (HHD) under diagnostic code 7101-7007 in a May 1979 rating decision. His disability was later recharacterized as hypertension under diagnostic code 7101 in an October 1979 rating decision. 

2. In a September 1981 rating decision, the Veteran's disability evaluation was increased to 40 percent under diagnostic code 7101 from June 2, 1980.

3. In a November 1983 rating decision, the RO recharacterized the Veteran's disability as HHD and increased his disability evaluation to 60 percent under diagnostic code 7007 from September 26, 1983.

4. In a 1986 rating decision, the RO reduced the Veteran's disability rating from 60 percent to 30 percent under diagnostic code 7007. This decision contained clear and unmistakable error and was later corrected in a May 2015 rating decision. 

5. In August 2001, the Veteran requested an increased rating for his disability. In an April 2002 rating decision, he was awarded a 60 percent disability rating for HHD under diagnostic code 7007 from July 2001. However, in light of a May 2015 rating decision restoring his 60 percent rating for hypertension with hypertensive heart disease under diagnostic code 7007, the legal and factual bases for the April 2002 rating decision changed. 

6. A May 2014 rating decision found that the April 2002 rating decision was clearly and unmistakably erroneous to the extent that it did not award separate ratings for hypertension and HHD. The May 2014 rating decision assigned a 10 percent effective date for hypertension from August 2000. 

7. A May 2015 rating decision found that the effective dates assigned for the ratings for hypertension and HHD in the May 2014 and April 2002 rating decisions, respectively, were the result of clear and unmistakable error, and corrected the effective date for the separate awards to August 31, 2001. 

8. A December 2016 rating decision increased the Veteran's separate rating for hypertension to 40 percent from August 31, 2001. 

9. The Veteran was not entitled to separate evaluations for hypertension and HHD until amendments to 38 C.F.R. § 4.104 became effective on January 12, 1998.

10. The Veteran's 60 percent rating for hypertension with HHD was not in effect for 20 years or longer. 

CONCLUSION OF LAW

The legal and factual bases of an April 2002 rating decision were altered by the restoration of the 60 percent rating for HHD with hypertension under diagnostic code 7007, but the RO properly implemented this revision, as well as other revised decisions, by separately awarding a 60 percent rating for HHD under diagnostic code 7007 and 40 percent for hypertension under diagnostic code 7101 from August 31, 2001, and entitlement to a 60 percent rating for hypertension from August 31, 2001, is not warranted. 38 U.S.C. §§ 110, 1159; 38 C.F.R. §§ 3.951, 4.104, Diagnostic Codes 7007 and 7101. 

REASONS AND BASES FOR FINDINGS AND CONCLUSION

The Veteran served on active duty in the United States Army from July 1972 to July 1974. 

By way of procedural background, the Veteran was awarded service connection for hypertension with hypertensive heart disease, or HHD, under the then-applicable diagnostic code 7101-7007 in a May 1979 rating decision. Due to the rating criteria if effect at that time, the conditions were rated together as one disability. 

Shortly thereafter, the RO recharacterized his disability as hypertension under diagnostic code 7101 in an October 1979 rating decision and awarded a 10 percent disability rating. In a September 1981 rating decision, the RO increased his rating for hypertension to 40 percent under diagnostic code 7101. Then, in November 1983, the RO recharacterized his disability as HHD and awarded a 60 percent rating under diagnostic code 7007. Three years later, in a 1986 rating decision, the RO reduced his rating for HHD to 30 percent under diagnostic code 7007. Eventually, in August 2001, the Veteran requested an increased rating for his disability. Subsequently, the RO issued an April 2002 rating decision, which increased his rating for HHD to 60 percent under diagnostic code 7007 from July 2001. 

In February 2014, the Veteran alleged that the April 2002 rating decision contained clear and unmistakable error, or CUE, to the extent that it did not issue separate ratings for HHD and hypertension. To that end, changes to the regulations that contained the rating criteria for hypertension and HHD that would have effectively allowed separate ratings for hypertension and HHD became effective January 12, 1998. See 62 Fed. Reg. 65,207 (Dec. 11, 1997) (changing the rating criteria under diagnostic code 7007 such that ratings for HHD were not based on blood pressure measurements). The Veteran also alleged that the 1986 rating decision that reduced his rating from 60 percent to 30 percent contained CUE as well. 

In a May 2014 rating decision, the RO issued a decision finding that there was CUE in the April 2002 rating decision to the extent that it did not assign a separate rating for hypertension under diagnostic code 7101. In the same decision, the RO assigned a 10 percent rating for hypertension under diagnostic code 7101 from August 31, 2000. 

Thereafter, in a May 2015 rating decision, the RO made three findings: (1) there was CUE in the 1986 rating decision that reduced his rating for HHD to 30 percent; (2) there was CUE in the April 2002 rating decision to the extent that it had assigned an effective date of July 2001 for his 60 percent rating for HHD; and (3) there was CUE in the May 2014 rating decision, which should have assigned an August 31, 2001, effective date for the 10 percent rating for hypertension under diagnostic code 7101. 

Afterwards, the Veteran submitted multiple statements arguing that the RO had failed to properly implement its previous findings of CUE to the extent that it had awarded a 10 percent rating for hypertension from August 31, 2001. For instance, he argued that both his HHD and hypertension had continuously been rated at 60 percent because the RO had found there was CUE in the 1986 rating decision, and asked for VA to consider whether a 60 percent rating for hypertension was protected under the "20-year rule." He also argued that it would violate 38 U.S.C. § 110 to rate his hypertension at less than 60 percent because, once CUE had been found in the 1986 rating decision, the RO should have considered the impact of the finding of CUE on the legal and factual bases for subsequent rating decisions, pursuant to Pirkl v. Shinseki (Pirkl I), 718 F.3d 1379 (Fed. Cir. 2013). Additionally, he argued that, because his 1983 blood pressure readings would have supported a 60 percent rating for hypertension under diagnostic code 7101, as well as a 60 percent rating for HHD, both 60 percent ratings were protected now that separate ratings had become available. He explicitly stated that he was not requesting an increased rating for his hypertension and that instead he was seeking for the RO to "restore" his ratings following the finding of CUE. 

Subsequently, the RO issued a December 2016 rating decision in the legacy appeals system, which increased his rating for hypertension under diagnostic code 7101 to 40 percent from August 31, 2001. In that decision, the RO explained that his hypertension was initially evaluated at 40 percent under diagnostic code 7101 from June 1980; that his hypertension had been evaluated as part of his HHD as 60 percent disabling, but that at the time his blood pressure measurements warranted a 40 percent rating since his predominant diastolic blood pressure readings were 120 or more; a 1986 VA examination also showed that diastolic readings were predominantly 120 or more; the first evidence showing blood pressure readings below the 40 percent criteria were from March 2002; and, because the hypertension would have been considered rated at 40 percent for over 20 years at the time it was separated from his heart disease, he was entitled to a 40 percent rating from August 31, 2001. 

The Veteran filed a timely notice of disagreement with the December 2016 rating decision, and a statement of the case was issued in March 2018. The Veteran submitted a VA Form 9 reiterating his arguments that properly implementing the findings of CUE would yield a rating of 60 percent for hypertension from August 31, 2001, and that his diastolic blood pressure readings were predominantly 130, not 120. In May 2018, however, the Veteran opted into the modernized review system, also known as the Appeals Modernization Act (AMA), by submitting a Rapid Appeals Modernization Program (RAMP) election form and selecting the higher-level review (HLR) lane. 

The RO issued a RAMP HLR decision in September 2018, which is the decision on appeal here. In his November 2018 decision review request, the Veteran elected the Direct Review docket. Subsequently, the Board issued a decision in March 2019 that denied a rating in excess of 40 percent for hypertension from August 31, 2001. In its March 2019 decision, the Board characterized the issue on appeal as whether an increased disability rating was warranted for his hypertension between August 31, 2001, and May 19, 2018, and denied a disability rating in excess of 40 percent. Thereafter, the Veteran appealed this decision to the Court of Appeals for Veterans Claims (Court). In December 2020, the Court issued a memorandum decision in vacating the Board's March 2019 decision. 

In the Court's memorandum decision, the Court explained that the Board mischaracterized the issue on appeal as a claim for an increased rating. Although the Veteran was effectively seeking a higher disability rating for hypertension, the issue on appeal was instead whether the RO had correctly implemented corrections to prior rating decisions to the extent that it had not awarded a separate 60 percent rating for hypertension. In other words, the Court explained, the Board should have discussed whether correction of the 1986 rating decision (i.e., restoration of the 60 percent rating for HHD with hypertension) altered the factual and legal bases for, and conclusions of, the April 2002 rating decision (which itself had been corrected) that had formed the basis for the separate evaluations under diagnostic codes 7007 and 7101. Last, the Court indicated that the Board should provide an adequate analysis responding to the Veteran's contentions that 38 U.S.C. § 110 and 38 C.F.R. § 3.951, pertaining to protected ratings, obviated two separate 60 percent ratings for HHD and hypertension. The matter now returns to the Board for readjudication. 

Consistent with the Court's memorandum decision, the Board has considered whether correction of the 1986 rating decision altered the factual and legal bases for the April 2002 rating decision that formed the basis for the separate evaluations under diagnostic codes 7007 and 7101, as well as the Veteran's arguments with respect to protected ratings. Before discussing these issues, however, the Board will first describe the legal framework relevant to its analysis. 

First, the Board will discuss the provisions of diagnostic codes 7010 and 7007 and how they have changed over time. Prior to January 1998, diagnostic code 7007, which governed the ratings for HHD, included multiple criteria, such as blood pressure readings. For instance, in 1983 (i.e., when the RO increased the Veteran's rating from 40 percent under diagnostic code 7101 to 60 percent under diagnostic code 7007), diagnostic code 7007 provided that a 30 percent rating was warranted with definite enlargement of the heart, sustained diastolic hypertension of 100 or more, and moderate dyspnea on exertion. 38 C.F.R. § 4.104, Diagnostic Code 7007 (1983). A 60 percent rating was warranted for marked enlargement of the heart, confirmed by roentgenogram, or the apex beat beyond midclavicular line, sustained diastolic hypertension, diastolic 120 or more, which may later have been reduced, with dyspnea on exertion and precluding more than light manual labor. Id. Last, a 100 percent rating was warranted for HHD with definite signs of congestive heart failure and precluding more than sedentary employment. 

Effective January 1998, however, diagnostic code 7007 was significantly revised. To that end, references to hypertension and blood pressure readings were deleted, while references to metabolic equivalents, or METs, were added. For instance, under the amended version of diagnostic code 7007, a 10 percent rating was assigned for HHD when a workload of greater than 7 METs but not greater than 10 METs resulted in dyspnea, angina, dizziness, or syncope, or where continuous medication was required. 38 C.F.R. § 4.104, Diagnostic Code 7007. A 30 percent rating was warranted where a workload of greater than 5 METs but not greater than 7 METs resulted in dyspnea, fatigue, angina, dizziness, or syncope, or where there was evidence of cardiac hypertrophy or dilation on electrocardiogram, echocardiogram, or x-rays. Id. A 60 percent rating was assigned where there had been more than one episode of acute congestive heart failure in the past year, or where a workload of greater than 3 METs but not greater than 5 METs resulted in dyspnea, fatigue, angina, dizziness, or syncope, or with left ventricular dysfunction with an ejection fraction of 30 to 50 percent. Id. Last, a 100 percent rating was assigned for chronic congestive heart failure, or where a workload of 3 METs or less resulted in dyspnea, fatigue, angina, dizziness, or syncope, or with left ventricular dysfunction with an ejection fraction of less than 30 percent. Id. 

Prior to January 1998, diagnostic code 7010, governing ratings for hypertensive vascular disease (i.e., hypertension and isolated systolic hypertension), contained criteria based on blood pressure readings and the severity of symptoms. For instance, in 1981 (i.e., when the RO increased the Veteran's rating from 10 percent to 40 percent under diagnostic code 7101), diagnostic code 7101 provided that a 10 percent rating was available for diastolic pressure predominantly 100 or more, a 20 percent rating was available for diastolic pressure predominantly 110 or more with definite symptoms, a 40 percent rating was available for diastolic pressure predominantly 120 or more with moderately severe symptoms, and a 60 percent rating was available for diastolic pressure predominantly 130 or more with severe symptoms. See 38 C.F.R. § 4.104, Diagnostic Code 7101 (1981). With respect to the 40 and 60 percent ratings, note (1) provided that careful attention to diagnosis and repeated blood pressure readings was required. Id. 

Effective January 12, 1998, however, the rating criteria were amended to focus solely on blood pressure measurements. Pursuant to the amendments, diagnostic code 7101 provided that a 10 percent rating was warranted for diastolic pressure predominantly 100 or more, or systolic pressure predominantly 160 or more, with a minimum evaluation for an individual with a history of diastolic pressure predominantly 100 or more who required continuous medication for control. 38 C.F.R. § 4.104, Diagnostic Code 7101 (1998). A 20 percent rating was warranted for diastolic pressure predominantly 110 or more or systolic pressure predominantly 200 or more, while a 40 percent rating was warranted for diastolic pressure predominantly 120 or more, and a 60 percent rating was warranted for diastolic pressure predominantly 130 or more. Id. Note (1) provided that hypertension had to be confirmed by readings taken two or more times on at least three different days. Id. 

In addition to the rating criteria for hypertension and HHD, the rules prohibiting pyramiding are pertinent to this appeal. More specifically, 38 C.F.R. § 4.14 provides that the evaluation of the same disability under various diagnoses is to be avoided. Relevantly, the regulation provides that symptoms such as dyspnea may result from many causes, and the evaluation of the same manifestation of a disability under different diagnoses is to be avoided. Accordingly, separate ratings for hypertension and HHD under their respective diagnostic codes would have generally violated the rule against pyramiding prior to the amendments that took effect in January 1998, because both diagnostic code 7007 and 7101 accounted for manifestations such as blood pressure measurements and severity of cardiovascular symptoms. Although the amended regulations did not explicitly note that separate ratings could be awarded under diagnostic code 7101 and 7007, for HHD, the symptoms governed under the diagnostic codes were no longer overlapping, alleviating concerns of pyramiding from that point forward. To that end, the rating criteria were amended to explicitly provide for separate evaluations for hypertension and HHD, effective October 6, 2006. See 71 Fed. Reg. 52,457 (Sept. 6, 2006). 

With respect to the rules regarding the preservation of disability ratings, 38 U.S.C. § 110 provides that a disability that has been continuously rated at or above evaluation for 20 or more years for compensation purposes shall not thereafter be rated at less than such devaluation, except upon a showing of fraud. The 20-year period will be computed from the effective date of the evaluation to the effective date of reduction of evaluation. 38 C.F.R. § 3.951(b). The accompanying regulation provides that a readjustment to the Schedule of Rating Disabilities shall not be the grounds for a reduction of a disability rating in effect on the date of the readjustment unless medical evidence shows that a disability has actually improved. 38 C.F.R. § 3.951(a). Additionally, 38 U.S.C. § 1159 provides that service connection for any disability that has been in force for 10 or more years will not be severed except upon a showing of fraud or if it is clearly shown from military records that the person concerned did not have requisite service or character of discharge. 

Relevantly, in Murray v. Shinseki, 24 Vet. App. 420 (2011), the Court determined that once a veteran's rating under a particular diagnostic code becomes protected under 38 C.F.R. § 3.951(b), it is improper to change the diagnostic code under which the veteran is rated, even if the overall rating for the disability does not change. The Murray case involved a veteran who had been rated under diagnostic code 5257, for recurrent subluxation or lateral instability of the knee. Id. at 421. The Murray Court found that the Board had erred when it reaffirmed an RO decision to continue the same 10 percent rating under diagnostic code 5260/5261 for newly developed arthritis, but to discontinue the rating under diagnostic code 5257 because he did not show symptoms of knee laxity. Id. at 427-28. The Court reasoned that doing so effectively reduced the protected disability rating to 0 percent, which was prohibited, and remanded the case for the Board to reinstate the 10 percent rating under diagnostic code 5257 and assign a separate 10 percent rating for painful motion of the knee. Id. at 428. 

In contrast, the Federal Circuit Court of Appeals (Federal Circuit) decided in Read v. Shinseki, 651 F.3d 1296, 1302 (2011), that a change in a diagnostic code to correct "the situs of the injury," (i.e., to correct the diagnostic code under which the Veteran was rated to more accurately reflect the part of the body affected by a service-connected disability) was not a violation of 38 U.S.C. § 1159, which protected against severance of service connection for a disability that had been in force for 10 years or more. In Read, the Federal Circuit stated that the issue was not whether a rating under a particular diagnostic code was protected, as the rating had not been in effect for 20 years or more, but rather whether changing the diagnostic code to a more appropriate one effectively severed service connection for the "disability" rated under that code. See id. at 1301. The Federal Circuit noted that selecting diagnostic codes is "most closely related to . . . the degree of the disability," rather than whether or not a disability was service connected (i.e., what 38 U.S.C. § 1159 protects). See id. at 1300. Ultimately, the Federal Circuit held that VA does not sever service connection for a particular disability in violation of 38 U.S.C. § 1159 by changing a diagnostic code under which a veteran is rated for purpose of correcting an error or misdiagnosis. Id. at 1302. 

Last, the Federal Circuit held in Pirkl I that a finding of CUE can change the legal and factual background against which subsequent rating decisions are made and that, under some circumstances, may require a later decision to be revisited. 718 F.3d at 1384. 

Having set forth the applicable legal framework, the Board now turns to its analysis. In this respect, the Board observes that the intent of Pirkl I is to correct the legal and factual bases underlying subsequent rating decisions following a revision of a prior rating decision based on CUE. To that end, the impact of the May 2015 rating decision finding that the 1986 reduction was clearly and unmistakably erroneous was to restore or "reset" the 60 percent rating, as if the 1986 rating decision had not been issued. (The May 2015 rating decision also corrected effective dates that had previously been assigned for the separate ratings.) Had the 1986 rating decision not been issued, the April 2002 rating decision would not have increased the rating for HHD from 30 percent to 60 percent, effective July 2001. Moreover, given the regulatory changes that took effect in January 1998, the April 2002 adjudicators would have been permitted to award separate ratings under diagnostic codes 7101 and 7007, as the rating criteria under diagnostic code 7007 would not have been based on blood pressure readings. In this sense, the correction of the 1986 rating decision did in fact change the legal and factual bases of the April 2002 rating decision. The RO implemented these changes in its May 2015 rating decision to the extent that it restored the 60 percent rating for HHD with hypertension under diagnostic code 7007 from September 26, 1983, and awarded separate ratings for hypertension and HHD from August 31, 2001. Additionally, the RO also implemented the revision of its prior decisions to the extent that it awarded a separate 40 percent rating for hypertension from August 31, 2001, in its December 2016 rating decision. 

In other words, the correction of the 1986 reduction changed the legal and factual bases of other decisions, consistent with Pirkl I. The RO took appropriate steps to implement those changes when it restored the 60 percent rating for HHD with hypertension and issued separate ratings for hypertension and HHD from August 31, 2001. Nonetheless, the fact that the 1986 rating decision was corrected and other decisions revisited does not require the RO to issue separate 60 percent ratings for both hypertension and HHD from August 31, 2001. 

First, the Board notes that the Veteran's 60 percent rating for HHD with hypertension under diagnostic code 7007 went into effect on September 26, 1983. Prior to that, the Veteran was rated at 40 percent for manifestations of the same disability under diagnostic code 7101 from June 2, 1980. As such, at the time of his August 2001 claim, which gave rise to the April 2002 rating decision that ultimately gave rise to the separate ratings for hypertension and HHD, his 60 percent disability rating under diagnostic code 7007 had not yet been in effect for 20 years. As such, the so-called 20-year rule would not have applied to the 60 percent rating. Significantly, as the Veteran has pointed out, a rating of at least 40 percent for his disability would have been in effect for more than 20 years at the time. Nonetheless, his 60 percent rating for HHD with hypertension was not in effect for 20 years or more when his separate ratings for HHD and hypertension went into effect. It thus cannot be said that the RO incorrectly applied the 20-year rule by not assigning two 60 percent ratings from August 31, 2001. 

Essentially, the Veteran appears to be making an argument akin to the argument made in the Murray case. Stated differently, he seems to be arguing that a 60 percent rating is protected under both diagnostic codes 7007 and 7101 and that assigning a 40 percent rating for hypertension from August 31, 2001, effectively reduced his rating for his disability, which was prohibited. As set forth above, however, the 60 percent rating for HHD with hypertension was not in effect for more than 20 years as of August 31, 2001. Moreover, the Murray case concerns a different factual scenario. Indeed, the Murray case involved a veteran who no longer had some symptoms of his knee disability but had been compensated for those specific symptoms for at least 20 years. Such is not the case here. In this respect, the record does not reflect that the RO assigned a 40 percent rating for hypertension after finding that some symptoms of his disability were not present anymore. Moreover, the RO did not reduce a 60 percent rating for his disability to a single 40 percent rating. Instead, the RO recharacterized his disability because regulatory changes permitted separate ratings to be assigned for HHD and hypertension, whereas separate ratings would have constituted pyramiding at the time service connection was initially awarded in 1979. As set forth in the December 2016 rating decision, the RO assigned a separate 40 percent rating for hypertension from August 31, 2001, largely because hypertension would have been considered rated at 40 percent for over 20 years at the time it was separated from his heart disease, based on VA examination findings from 1983. 

Rather, the situation here more closely resembles the facts in the Read case. In assigning separate ratings for both hypertension and HHD from August 31, 2001, the RO was updating the diagnostic codes in effect to more accurately reflect the disability that was being compensated. In 1979, when service connection was initially awarded, HHD and hypertension had to be rated together as a single disability instead of two separate disabilities because separate evaluations for HHD and hypertension would have constituted impermissible pyramiding. Stated another way, it would have violated 38 C.F.R. § 4.114 to compensate the same symptoms (e.g., certain blood pressure readings) under multiple diagnostic codes with separate ratings. By later establishing a separate 40 percent rating for hypertension under diagnostic code 7101 alongside a 60 percent rating for HHD under diagnostic code 7007, the RO was merely taking steps to reflect the disabilities being compensated more accurately. As noted in the May 2014 rating decision establishing separate ratings, this was done in consideration of amendments to the rating criteria that removed references to overlapping manifestations, including blood pressure readings. 

Last, the Board notes that the Veteran has argued that his 1983 blood pressure readings would have supported a 60 percent rating for hypertension under diagnostic code 7101, as well as a 60 percent rating for HHD. To that end, the Board emphasizes that separate ratings were not permissible under diagnostic codes 7007 and 7101 at that time. Furthermore, the Board notes that the RO assigned a 60 percent rating under diagnostic code 7007 in its 1983 rating decision because it was ultimately more favorable to the Veteran, and not necessarily because he satisfied the criteria for a 60 percent rating under both diagnostic code 7007 and 7101. Indeed, although the Veteran's September 1983 VA examination reflected blood pressure readings of 192/130, 194/128, and 186/134, note (1) accompanying diagnostic code 7101 provided that careful attention to repeated blood pressure readings was required when assigning ratings greater than 20 percent. Previous blood pressure readings then of record did not indicate diastolic pressure predominantly 130 or more. For instance, the Veteran's existing VA treatment records reflected blood pressure readings of 150/110 on October 13, 1980; 156/118, 130/90, and 135/95 on May 29, 1980; 150/96 on April 28, 1980; and 120/90 on January 16, 1980. Additionally, his most recent prior VA examination from May 1981 showed blood pressure readings of 164/120, 154/110, and 178/134. 

In sum, while the then-extant rating criteria for a 40 percent rating for hypertension under diagnostic code 7101 were satisfied, it does not appear that the criteria for a 60 percent rating under diagnostic code 7101 were. As such, it appears that a 60 percent rating was assigned under the more favorable provisions of diagnostic code 7007, which permitted a 60 percent rating for symptoms including sustained diastolic hypertension of 120 or more. All this is to say that the Board is not persuaded by the Veteran's argument that he satisfied the rating criteria for a 60 percent rating under both diagnostic codes 7101 and 7007 when the RO awarded a 60 percent rating on September 26, 1983, and that it was thus not a reduction in rating for the RO to award a 40 percent rating for hypertension from August 31, 2001. 

For the foregoing reasons, the Board finds that it was neither an impermissible rating reduction nor severance of service connection to assign a 60 percent rating for HHD under diagnostic code 7007 and a 40 percent rating for hypertension under diagnostic code 7101 from August 31, 2001. Although the legal and factual bases of the April 2002 rating decision were altered in light of the correction of the 1986 rating decision, the RO properly implemented this revision, as well as other subsequent revisions based on CUE, to the extent that it did not assign a separate rating in excess of 40 percent for hypertension. Entitlement to a 60 percent rating for hypertension under diagnostic code 7101 from August 31, 2001, is thus denied. 

As a final matter, because the Veteran selected Direct Review of the HLR decision on appeal, the Board may only consider the evidence of record at the time of the RAMP opt-in in May 2018. 38 C.F.R. § 20.301. However, evidence was added to the claims file during a period of time when new evidence was not allowed (i.e., after the May 2018 RAMP opt-in). As such, the Board may not consider this evidence in its decision. 38 C.F.R. § 20.300. If he wishes, the Veteran may file a Supplemental Claim and submit or identify this evidence. 38 C.F.R. § 3.2501. If the evidence is new and relevant, VA will issue another decision on the claim, considering the new evidence in addition to the evidence previously considered. Id. Specific instructions for filing a Supplemental Claim are included with this decision. 

 

M. Tenner

Veterans Law Judge

Board of Veterans' Appeals

Attorney for the Board E. Rademacher, Associate Counsel

The Board's decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.